[Civ. Nos. 19293, 19495. Fourth Dist., Div. Two. Feb. 23, 1979.]

AGRICULTURAL LABOR RELATIONS BOARD,
Plaintiff and Appellant, v.
LAFLIN & LAFLIN et al., Defendants and Respondents;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Intervener and Appellant.

654

656

COUNSEL

Harry J. Delizonna, Dennis M. Sullivan, Marvin J. Brenner, Ellen Lake and Edwin F. Lowry for Plaintiff and Appellant.

Jerome Cohen, Sanford N. Nathan, Deborah Wiener Peyton, W. Daniel Boone, Glenn Rothner, Ellen Greenstone, E. Michael Heumann II, Linton Joaquin, Dianna Lyons, Kirsten L. Zerger, Tom Dalzell, George C. Lazan and James Rutkowski for Intervener and Appellant.

David E. Smith for Defendants and Respondents.

OPINION

KAUFMAN, J.—The Agricultural Labor Relations Board (hereafter ALRB or Board) appeals from an order of the Riverside Superior Court denying its application for preliminary injunctions pending disposition of unfair labor practice charges against four separate agricultural employers: Cy Mouradick & Sons, Coachella Vineyards, Richard Peters Farms and Harry Carian (hereafter respondents). United Farm Workers of America, AFL-CIO (hereafter UFW) appeals from the same order and a subsequent order denying its motion to vacate the first.

*Facts and Background Law*

Some pertinent facts will be included in the discussion of the issues. Summarized here are the facts and law necessary to an understanding of the contentions. (All statutory references will be to the Labor Code unless otherwise specified.)

Respondents are four grape growers in Coachella Valley. They are subject to the Agricultural Labor Relations Act (Lab. Code, § 1140 et seq. [hereafter ALRA]) as agricultural employers (Lab. Code, § 1140.4, subd. (c)). UFW is a labor organization as defined by section 1140.4, subdivision (f). ALRB is the state administrative agency charged with implementation of ALRA including the conduct and certification of representation elections (see §§ 1156-1159) and adjudication of unfair labor practice charges (see §§ 1160-1160.9; *Belridge Farms* v. *Agricultural Labor Relations Bd.*, 21 Cal.3d 551, 557-558 [147 Cal.Rptr. 165, 580 P.2d 665]). By

section 1144, ALRB is authorized to make "such rules and regulations as may be necessary to carry out the provisions of [ALRA]."

Under its rule-making power, ALRB promulgated a regulation designated section 20910 of title 8 of the California Administrative Code, effective December 1, 1976. So far as is here pertinent, that regulation provides that any labor organization that has filed a valid notice of intent to take access on a designated employer within the past 30 days may file a notice of intention to organize the agricultural employees of the same employer signed by or accompanied by authorization cards signed by at least 10 percent of the current employees of the employer. Within five days thereafter, the employer is required to furnish to ALRB an employee list as described in the regulations. Thereupon ALRB's regional director is to determine if the 10 percent showing of interest has been satisfied and, if so, is to make a copy of the employee list available to the filing labor organization. The same list is to be made available to any labor organization which within 30 days of the original filing date files a notice of intention to organize the agricultural employees of the same employer. No employer is required to provide more than one such employee list in any 30-day period. The employee list required by regulation 20910 is known as a "prepetition employee list."[1]

An employee list is defined by the regulations as "[a] complete and accurate list of the complete and full names, current street addresses, and job classifications of all agricultural employees, including employees hired through a labor contractor, in the bargaining unit sought by the petitioner [organizing union] in the payroll period immediately preceding the filing of the petition."[2] (Cal. Admin. Code, tit. 8, § 20310(a)(2).)

[1] Under the statute, the representation election process is triggered by a labor organization's filing a *petition for certification* signed by or accompanied by authorization cards signed by a majority of the current employees of the designated employer. (See § 1156.3; Cal. Admin. Code, tit. 8, § 20300.) An earlier and *still-existing regulation* (Cal. Admin. Code, tit. 8, § 20310(a)(2)) requires the employer to furnish an employee list after filing and service of a petition for certification. Subsequently regulation 20910 was promulgated requiring the employer to furnish ALRB an employee list even before a petition for certification has been filed (hence, a "prepetition" employee list) upon the filing of a notice of intention to organize accompanied by the requisite 10 percent showing of interest.

[2] The reference in the quoted definition to "petitioner" and "petition" is explained by the fact that regulation 20310(a)(2) was promulgated with reference to Labor Code section 1156.3 which provides for the filing of a *petition for certification* which triggers the election process. (See fn. 1, *ante.*)

Between February 14 and April 26, 1977, pursuant to sections 1149 and 1160.2,[3] on charges by UFW, ALRB's general counsel filed unfair labor practice complaints against respondents and a number of other agricultural employers charging that each of them had committed an unfair labor practice by failing timely to furnish a complete and accurate employee list in compliance with regulation 20910.[4]

On June 6, 1977, ALRB issued its decision finding respondents Coachella Vineyards and Cy Mouradick & Sons and some of the other growers guilty of the unfair labor practices charged. Stating that the same remedies are appropriate in cases of partial failure to comply with regulation 20910(c) as in the case of outright refusal to comply (see fn. 4, *ante*), Board issued extensive remedial orders. (See § 1160.3.) The portions of the orders that are of direct concern on appeal are those relating to prepetition employee lists and expanded access. Cy Mouradick & Sons and Coachella Vineyards were ordered to cease and desist from "[r]efusing to provide the ALRB with an employee list as required by § 20910(c) of the Regulations." Further, each employer was ordered to take "affirmative action" to effectuate the policies of ALRA, including (1) providing to ALRB forthwith the prepetition lists due pursuant to the notices of intention to organize previously filed by UFW (Jan. 25, 1977, as to Coachella Vineyards, and Jan. 26, 1977, as to Cy Mouradick & Sons[5]); (2) providing "the *UFW* with an employee list when the 1977 harvest begins and every two weeks thereafter" (italics added); and (3) granting UFW substantially expanded rights of access, i.e., substantially in excess of the access rights normally provided by the regulations.[6]

[3]Section 1149 reads in part: "He [General Counsel] shall have final authority, on behalf of the board, with respect to the investigation of charges and issuance of complaints under Chapter 6 (commencing with Section 1160) of this part, and with respect to the prosecution of such complaints before the board." (See *Belridge Farms* v. *Agricultural Labor Relations Bd., supra,* 21 Cal.3d at pp. 557-558.)

Section 1160.2 reads in pertinent part: "Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the board . . . shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the board or a member thereof . . . not less than five days after the serving of such complaint."

[4]The dates on which these complaints were filed against respondents are as follows: Cy Mouradick & Sons, February 14, 1977; Coachella Vineyards, February 15, 1977; Richard Peters Farms, April 26, 1977; Harry Carian, April 8, 1977 (amended complaint). In each case it was alleged that the employer had furnished one or more lists, but that they were untimely and/or incomplete or inadequate.

[5]1976 is the year set forth in the order in each instance. However, the facts recited in the decision indicate the year was in fact 1977.

[6]Under ALRB's regulations, "normal" access "is specifically limited in purpose, in time and place, and in the number of organizers permitted to participate; and conduct is

On the same date, June 6, 1977, an administrative law officer (ALO) issued a proposed decision and recommended order (see § 1160.3) finding respondent Richard Peters Farms and Harry Carian and several other growers guilty of the unfair labor practices charged. The recommended order was in substance much like the orders of the Board in the other case. In addition to provisions not here material, it proposed to require respondents to cease and desist from "[r]efusing to provide the ALRB with an employee list as required by Section 20910(c) of the Regulations" and to take affirmative action including: (1) providing ALRB "with an employee list as required by Section 20910(c) of the Regulations"; (2) providing "the *UFW* with an employee list when the 1977 harvest begins and every two weeks thereafter" (italics added); and (3) granting "expanded access to the UFW as defined by the Board on the employer's property during this and the next harvest season."

On June 8, 1977, Ruth Friedman, an ALRB staff attorney, hand delivered to respondents' attorney a copy of the June 6 decisions and orders of the Board and the ALO, together with a letter addressed to respondents' attorney informing him Board would "expect a complete payroll list of all current employees of each of the employers to be in the ALRB office in Coachella by Thursday, June 9, 1977 at 1:00 p.m." for "the week ending June 3, 1977," that "[e]ach of the lists must be in strict compliance with Section 20310(a)(2) of the Board's regulations" and that if this demand were not complied with Board intended to apply to the Riverside Superior Court "for an order restraining each of these

forbidden, other than speech, which is 'disruptive of the employer's property or agricultural operations, including injury to crops or machinery.'" (*Agricultural Labor Relations Bd.* v. *Superior Court,* 16 Cal.3d 392, 400, fn. omitted [128 Cal.Rptr. 183, 546 P.2d 687].) In general, access is limited to one hour before work, one hour during the lunch period and one hour after work; the number of organizers is limited to two for each work crew on the property; and access is available to any one labor organization for no more than four 30-day periods in any calendar year. Each 30-day period commences when the labor organization files a written notice of intention to take access supported by the requisite showing of interest by the employer's agricultural employees. (See Cal. Admin. Code, tit. 8, § 20900(e).)

The orders provided that UFW's rights of access would be expanded in the following respects: (1) during normal access hours the number of organizers would be unlimited; (2) access would be permitted during working hours for organizers to talk to workers and distribute literature provided work was not disrupted and the number of organizers was not in excess of those normally permitted during nonworking hours; and (3) UFW would have one additional 30-day access period during the current calendar year in addition to the four periods normally provided. The validity of an order for such expansive access rights is an issue in *Pandol & Sons* v. *Agricultural Labor Relations Bd.* (5 Civ. 3446) in which rehearing was granted March 21, 1978.

employers from refusing to comply with the entire orders [sic] in each of the cases."[7]

On June 10, 1977, ALRB filed in Riverside Superior Court a petition for restraining orders and preliminary injunctions to restrain and enjoin respondents and the other growers "from failing to comply with" the orders of ALRB and the recommended order of the ALO dated June 6, 1977, and to restrain all parties from engaging in violence. After alleging the status of ALRB, the growers and UFW and the fact that UFW was currently engaged in an organizing campaign, the petition alleged the filing of the previously mentioned unfair labor practice complaints against the growers between February and April 1977, the rendition on June 6 by ALRB of its decision and orders and the rendition on the same date by the ALO of his proposed decision and recommended order,[8] and the fact that the growers were currently engaged in the harvest of grapes and were then or within the next four weeks would be at their peak of employment for the year. It further alleged that the decision of the ALO would not be final for at least 20 days after the order was served, by which time the harvest would be far advanced or over and "the lists" would be of no use; that unless restrained by the court, respondents and the other growers would "continue to commit unfair labor practices by continuing to refuse to comply with the order of the Board and Administrative Law Officer"; and that until 30 days after service of its orders, "the Board has no means to enforce its orders except by order of this Court." The prayer requested issuance of temporary restraining orders and preliminary injunctions enforcing the orders of the Board and the recommended order of the ALO dated June 6, 1977. It was requested that temporary restraining orders issue forthwith and that an order to show cause issue for hearing on the application for preliminary injunctions.

Three declarations were filed in support of the petition. Only one is material to the issues on appeal, that of Ruth Friedman concerning the June 8 letter notice to respondents' attorney demanding a complete

---

[7]The facts set forth in this paragraph are contained in a declaration by Ms. Friedman dated June 9, 1977, filed in support of ALRB's petition for restraining orders and preliminary injunctions filed June 10, 1977.

[8]The petition alleges that a copy of each of these decisions and orders is attached to the petition as an exhibit and incorporated into the petition. In fact, no copy of either document was attached to the petition. A copy of each was, however, attached to the memorandum of points and authorities filed by ALRB in support of its petition.

employee list from each grower for the week ending June 3 by 1 p.m. on June 9. (See text preceding fn. 7, *ante*.)[9]

Although it is not well documented in the record, there was apparently a hearing on June 10 with respect to issuance of the temporary restraining orders. In any event, on that date the court denied the request for temporary restraining orders except for an order restraining all parties from violence. The order to show cause hearing with respect to issuance of preliminary injunctions was set for June 24, 1977.

A minute order dated June 17, 1977, confirms the denial of the request for temporary restraining orders, stating numerous reasons, including: "the petition requests a permanent, mandatory injunction and has nothing to do with temporarily maintaining a status quo"; and the "Court has no jurisdiction because 30 days for appeal have not elapsed from the date of the ALRB order as required by Section 1160.8 of the ALR[A]."[10]

On June 23, 1977, one day before the scheduled hearing on ALRB's request for preliminary injunctions, ALRB filed a supplemental memorandum of points and authorities in which it stated it was reducing the scope of its request for injunctive relief. At the same time, Board filed four declarations by UFW organizers relating to the conduct of some of respondents and the resulting consequences thereof on UFW's organizing efforts.

On June 24, the order to show cause re preliminary injunctions came on for hearing. Although UFW was not a party to the proceedings, its attorney (Mr. Nathan) was present. He indicated to the court that UFW

---

[9]Of the other two, one was a declaration by UFW organizer David Villarino concerning a confrontation on June 8, 1977, between union organizers and Harry Carian and his son involving an alleged assault on Mr. Villarino and an attempted citizen's arrest of Rob Carian. The other is a declaration by a field examiner for ALRB in which she indicated the attorney for Henry Moreno, another grower not a party to this appeal, stated he would advise Moreno not to permit an inspection of his business records for the purpose of ascertaining whether he had complied with Board's order of June 6 without a court order. The attorney representing Moreno also was and is representing respondents.

[10]Among the 14 reasons stated by the court were several indicating the court felt regulation 20910 was not "reasonably 'necessary' " and was invalid on several bases, that the information that would be contained in the employee list was available to both Board agents and UFW organizers, and that UFW organizers in fact had "employee lists and know where the employees temporarily reside." Another reason given was that the prepetition employee list requirement was not being impartially and even-handedly enforced among the growers in the area.

would probably attempt to intervene at some stage of the proceedings, and the court permitted him to participate fully in the hearing. Several Riverside County Sheriff's deputies were sworn and gave testimony relating to the necessity for injunctions against threats and violence, and there was considerable wrangling and debate about issuance of such orders which had been requested not only by ALRB but some of respondents. The only fact of significance to this appeal disclosed during this part of the proceeding was that an election was scheduled in three days with respect to the employees of one respondent and several more elections were scheduled in the next few days with respect to the employees of several other respondents. The balance of the hearing consisted of discussion and argument relating to the propriety of and necessity for the injunctions sought by ALRB. At the conclusion of the hearing the court denied ALRB's petition for preliminary injunctions. It also denied respondents' request for restraining orders against UFW. The court's minute order dated June 24, 1977, reads in pertinent part: "Plff.'s request for Order Complying with Employee List Regulation and Expanded Access is DENIED." Subsequently UFW, which was until then not a party to the proceedings, filed a motion to vacate the order, and its motion was denied.

*Contentions, Issues and Discussion*

The parties are at odds as to the validity of regulation 20910, but we do not reach that question because the court's order denying ALRB's request for injunctions was clearly not based on a determination that the regulation was invalid, and the issues presented concerning the court's exercise of its discretion are dispositive.[11] Appellants contend the trial court was not entitled to exercise judicial discretion in considering ALRB's application for injunctive relief. Alternatively, they contend that if an exercise of judicial discretion was called for, the trial court either failed to exercise its discretion or employed an erroneous standard in doing so. Finally, appellants contend that, in any event, the trial court abused its discretion in denying the requested injunctive relief. We have concluded that none of these contentions is meritorious and that the orders of the trial court should be affirmed.

---

[11]We fully understand ALRB's desire for an adjudication of the validity of the regulation. We do not as fully comprehend what moves our dissenting brother to refer to the fact that the majority in the subpoena suppression case (4 Civ. 19156 [see fn. 14, *infra*]) found it unnecessary and inappropriate to pass on the question of the validity of the regulation or to suggest that the question ought to be resolved in this appeal notwithstanding that it is unnecessary to the decision. Other issues were dispositive of the

## Addressed to Judicial Discretion

The thrust of appellants' contention that the exercise of judicial discretion was not invoked by ALRB's application for temporary injunctive relief is best disclosed by quoting two excerpts from ALRB's opening brief: "While a court may ordinarily have discretion to determine whether to grant an injunction, such discretion must fall away when the injunction is sought to enforce a valid regulation." "If the regulation is valid—that is, within the authority of the agency and not arbitrary or capricious—it must be enforced through a subpoena, injunction or other appropriate means."[12] Cited in support of these propositions are *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d at p. 411, *Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172, 179-180 [70 Cal.Rptr. 407, 444 P.2d 79], and *Pitts* v. *Perluss,* 58 Cal.2d 824, 834-835 [27 Cal.Rptr. 19, 377 P.2d 83]. These cases are inapposite. They deal with the appropriate scope of judicial inquiry in a court's determination of the *validity* of a regulation promulgated by an administrative agency, not whether a request for temporary judicial enforcement of such a regulation by injunction invokes the exercise of judicial discretion.

Appellants are correct that the scope of judicial inquiry is quite limited in subpoena enforcement proceedings under section 1151, subdivision (b) of ALRA,[13] modeled after section 11(2) of the National Labor Relations Act (NLRA) (29 U.S.C. § 161(2)). Federal decisions including those under section 11(2) of the federal act which have precedential value in the interpretation of the derived provisions of the ALRA (see *Belridge Farms* v. *Agricultural Labor Relations Bd., supra,* 21 Cal.3d at p. 557; *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen,* 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905]), establish that a

---

subpoena enforcement case, as is the abuse of discretion issue here. Anything we might have said there or might say here about the validity of the regulation would have no binding precedential value and would constitute no more than an advisory opinion. (See *Young* v. *Three for One Oil Royalties,* 1 Cal.2d 639, 647-648 [36 P.2d 1065]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 223, pp. 4212-4213.)

[12]A persistent problem in this appeal is appellants' insistence on framing the issues in terms of "enforcement of the regulation" rather than in terms of the specific injunctive orders the court was requested to issue. As is clear from the record and ALRB's closing brief, what ALRB sought were injunctions enforcing the orders of the Board and ALO dated June 6, first in their entirety and later in part. (See fns. 19, 21, *infra.*) With only a single exception, the orders of June 6 required respondents to furnish *not lists due under the regulation,* but additional or "compensatory" lists to be furnished directly to UFW. (See discussion, *infra.*)

[13]Section 1151, subdivision (b) reads in pertinent part: "In case of contumacy or refusal to obey a subpoena issued to any person, any superior court in any county within the

subpoena enforcement order should issue if it appears the administrative subpoena was regularly issued and the records sought are relevant to the administrative inquiry and identified with sufficient particularity, unless the subpoena is overbroad or unreasonably burdensome or oppressive. (See, e.g., *United States* v. *Morton Salt Co.,* 338 U.S. 632, 652-653 [94 L.Ed. 401, 416, 70 S.Ct. 357]; *Okla. Press Pub. Co.* v. *Walling,* 327 U.S. 186, 208 [90 L.Ed. 614, 629, 66 S.Ct. 494, 166 A.L.R. 531]; *N.L.R.B.* v. *Frederick Cowan and Company, Inc.* (2d Cir. 1975) 522 F.2d 26, 28; *N.L.R.B.* v. *C.C.C. Associates, Inc.* (2d Cir. 1962) 306 F.2d 534, 538; *N.L.R.B.* v. *Rohlen* (7th Cir. 1967) 385 F.2d 52, 58; *National Labor Relations Board* v. *Duval Jewelry Company of Miami, Inc.* (5th Cir. 1958) 257 F.2d 672, 672-673; *Jackson Packing Co.* v. *National Labor Relations Board* (5th Cir. 1953) 204 F.2d 842, 844; *N.L.R.B.* v. *United Aircraft Corporation* (D.Conn. 1961) 200 F.Supp. 48, 50-51.) However, the proceeding at bench was not one to judicially enforce a subpoena under section 1151, subdivision (b).[14]

---

jurisdiction of which the inquiry is carried on, or within the jurisdiction of which such person allegedly guilty of contumacy or refusal to obey is found or resides or transacts business, shall, upon application by the board, have jurisdiction to issue to such person an order requiring such person to appear before the board . . . there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question. Any failure to obey such order of the court may be punished by such court as a contempt thereof."

[14]The background to appellants' reference to enforcement of the regulation by subpoena is that several weeks prior to ALRB's application for injunctions, ALRB had applied to the superior court for subpoena enforcement orders with respect to subpoenas duces tecum issued by the Board to several growers including respondent Carian based on the same alleged failure to supply a complete and adequate employee list as that underlying the unfair labor practice charges against Carian in the case at bench. Extensive memoranda of points and authorities were filed by the parties; the growers filed declarations; and some evidence was taken. The judge that heard the matter was the same judge that presided at the hearing on ALRB's request for injunctions in the case at bench. On June 6 the court rendered its order denying ALRB's request for subpoena enforcement orders on several bases, two of which were that regulation 20910(c) was invalid and that Carian had supplied the required employee list to the extent he was able to do so. On July 12, 1977, ALRB filed a petition for writ of mandate in the California Supreme Court seeking review of both the June 6 order denying its application for subpoena enforcement orders and the June 24 order denying its application for preliminary injunctions. The Supreme Court transferred the petition to this court for consideration. On August 1, 1977, this court issued an alternative writ of mandate with respect to the June 6 order denying subpoena enforcement, but denied the petition as to the June 24 order denying issuance of injunctions. On January 30, 1978, in a 2 to 1 decision, this court denied the peremptory writ of mandate, in effect affirming the trial court's order denying ALRB's request for subpoena enforcement orders. (4 Civ. 19156.) The decision revolved around questions as to whether or not the trial court had exceeded its authority or abused its discretion in ruling as it did. The majority did not address the question of the validity of the regulation. On April 28, 1978, the California Supreme

It is also true that judicial discretion plays little part in the issuance of court orders to enforce *final* remedial orders of Board in unfair labor practice proceedings. The relevant portion of section 1160.8 reads: "If the time for review of the board order has lapsed, and the person has not voluntarily complied with the board's order, the board may apply to the superior court . . . for enforcement of its order. If after hearing, the court determines that the order was issued pursuant to procedures established by the board and that the person refuses to comply with the order, the court *shall enforce such order by writ of injunction or other proper process. The court shall not review the merits of the order.*" (Italics added.) However, neither of the orders ALRB sought to enforce in the case at bench was final[15] and the proceeding was not one under section 1160.8.

ALRB's petition for temporary restraining orders and preliminary injunctions was based on section 1160.4 which reads: "The board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition the superior court . . . for appropriate temporary relief or restraining order. Upon the filing of any such petition, the board shall cause notice thereof to be served upon such person and thereupon the *court shall have jurisdiction to grant to the board such temporary relief or restraining order as the court deems just and proper.*" (Italics added.)

■ Thus, like NLRA section 10(j) (29 U.S.C. § 160(j)) from which it was derived, section 1160.4 expressly authorizes the court to determine whether the injunctive relief sought is "just and proper." Manifestly, in determining whether the injunctive relief sought is just and proper, the court must exercise judicial discretion. Not surprisingly, the federal decisions interpreting NLRA section 10(j) so indicate. (E.g., *Solien* v. *Merchants Home Delivery Service, Inc.* (8th Cir. 1977) 557 F.2d 622, 626,

---

Court denied ALRB's petition for hearing, but ordered the opinion of this court nonpublished.

[15]When unfair labor practice charges are heard by an ALO, any party may file exceptions to his recommended decision and order within 20 days after service thereof. If no exceptions are filed within the 20-day period or any further period authorized by the Board, the ALO's recommended decision and order become those of the Board. (§ 1160.3.) Any person aggrieved by an order of the Board may seek review of the order in the appropriate *Court of Appeal* within 30 days from the date of issuance of the order. Then, the Court of Appeal, not the superior court, has jurisdiction to grant to Board "such temporary relief or restraining order [as] it deems just and proper." (§ 1160.8.) If no aggrieved party seeks review in the Court of Appeal within the 30-day period, Board's order becomes final, and Board may then apply to the superior court for an enforcement order. (§ 1160.8.)

627; *Squillacote v. Local 248, Meat & Allied Food Wkrs.* (7th Cir. 1976) 534 F.2d 735, 743-744; *Boire v. Pilot Freight Carriers, Inc.* (5th Cir. 1975) 515 F.2d 1185, 1192-1193; *Boire v. International Brotherhood of Teamsters, etc.* (5th Cir. 1973) 479 F.2d 778, 787, 789; *Minnesota Mining and Manufacturing Company v. Meter* (8th Cir. 1967) 385 F.2d 265, 270, 272; *Angle v. Sacks* (10th Cir. 1967) 382 F.2d 655, 658; cf. *McLeod v. Local 25, International Bro. of Elec. Wkrs.* (2d Cir. 1965) 344 F.2d 634, 638, 639.)

Although there appears to be some disagreement whether the expression "as the court deems just and proper" was meant to encompass the normal equitable standard and the full panoply of equitable considerations that usually govern the issuance of injunctions or whether a special standard was intended (see *Squillacote v. Local 248, Meat & Allied Food Wkrs., supra,* 534 F.2d at p. 744, and cases there cited; *Boire v. Pilot Freight Carriers, Inc., supra,* 515 F.2d at pp. 1192-1193; *Brown v. Pacific Telephone and Telegraph Company* (9th Cir. 1955) 218 F.2d 542, 544 [conc. opn. of Pope, J.]), there is no question but that the statutory language reposes in the court a broad discretion. (See *Squillacote v. Local 248, Meat & Allied Food Wkrs., supra,* 534 F.2d at p. 744; *Boire v. Pilot Freight Carriers, Inc., supra,* 515 F.2d at pp. 1192-1193; *Minnesota Mining and Manufacturing Company v. Meter, supra,* 385 F.2d at p. 272.)

In view of the express statutory language authorizing the court to determine whether the relief sought is "just and proper" and the federal decisions cited, appellants' contention that a trial court may not exercise its discretion in determining whether to grant or deny temporary injunctive relief sought by ALRB under section 1160.4 is meritless.[16]

---

[16]Appellants assert and urge us to determine that the injunctive relief sought could also have been granted by the court under its general equity powers. In support of this proposition they cite federal decisions indicating that when the NLRB has, in connection with a pending certification election, subpoenaed specified books and records of an employer containing the names and addresses of his employees or in lieu thereof a list showing the names and addresses of all employees eligible to vote in the election (an *Excelsior* list), the board's subpoena may be enforced either by an enforcement order made pursuant to NLRA section 11(2) or by a mandatory injunction pursuant to the injunctive powers of a federal district court (see 28 U.S.C. § 1337). (See, e.g., *N.L.R.B.* v. *Hanes Hosiery Division-Hanes Corporation* (4th Cir. 1967) 384 F.2d 188, 191-192; *Swift & Company v. Solien* (E.D.Mo. 1967) 274 F.Supp. 953, 961; *N.L.R.B.* v. *British Auto Parts, Inc.* (C.D.Cal. 1967) 266 F.Supp. 368, 372, 374 [affd. on other grounds in 405 F.2d 1182 (9th Cir. 1968)].) Resolution of the question on this appeal, however, is both inappropriate and unnecessary.

In the first place, in view of our conclusion that ALRB's petition for injunctions under

*Failure to Exercise Discretion*

■ Although it is not entirely clear, it appears that appellants contend the trial court based its ruling on its conclusion that regulation 20910 was invalid and did not, in fact, exercise its discretion.[17] If, in fact, appellants so contend, they are mistaken. It is true that about two weeks earlier the same judge had presided at the hearing of a subpoena enforcement proceeding and that in his order dated June 6 denying ALRB's request one of the grounds stated for the denial was invalidity of the regulation (see fn. 14, *ante*). It is also true that one of the grounds stated for the denial of temporary restraining orders in the court's order of June 17 was invalidity of the regulation (see fn. 10, *ante,* and accompanying text). In each instance, however, that was only one of many bases specified by the court for its decision. Moreover, it is clear from the transcript of the hearing on June 24 that the injunctions requested by ALRB were not denied on the ground that the regulation was invalid but rather on the ground that the injunctions requested were not just and proper in the circumstances shown.

---

section 1160.4 was addressed to judicial discretion and that no abuse of discretion has been demonstrated, the same conclusions would flow a fortiori were the court's general equity powers invoked. If there is any difference between the discretion to be exercised by the court under section 1160.4 and the court's general equity powers, the discretion would certainly be broader under the latter. In determining whether to grant or withhold preliminary or temporary injunctive relief under its general equity powers, there can be no question but that the trial court exercises a very broad discretion which will be countermanded by an appellate court only upon demonstration of a manifest abuse of discretion. (E.g., *Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889]; *Gosney* v. *State of California,* 10 Cal.App.3d 921, 924 [89 Cal.Rptr. 390].) Secondly, as expressly acknowledged by appellants, ALRB's application for injunctive relief was based on section 1160.4, not the general equity powers of the court, and the question was never presented to the trial court. It is a well-settled rule of appellate practice that questions not raised in the trial court will not be considered for the first time on appeal. (E.g., *Estate of Westerman,* 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517], and cases there cited; *Lemelle* v. *Superior Court,* 77 Cal.App.3d 148, 159 [143 Cal.Rptr. 450], and cases there cited.) It is true there is an exception to the general rule permitting consideration of a question for the first time on appeal when it arises from undisputed facts and raises only a question of law (see *La Mancha Dev. Corp.* v. *Sheegog,* 78 Cal.App.3d 9, 14 [144 Cal.Rptr. 59], and cases there cited), but that exception is inapplicable to the question posed. The question here is whether the trial court abused its discretion. The court was never requested to exercise its general equity powers. On the contrary injunctive relief was sought specifically under section 1160.4. It would be both inappropriate and futile for us to attempt to review for abuse a discretion the court was never requested to exercise and did not purport to exercise.

[17]If this were true, the required disposition would be a reversal of the orders appealed from as to two respondents only, with directions to the trial court to exercise its discretion on remand.

Invalidity of the regulation was barely mentioned during the extensive injunction hearing. The first 17½ pages of the transcript of the hearing contain testimony and argument concerning the court's issuing orders enjoining the parties from engaging in violent conduct. Then the proceedings turned to the request for injunctions with respect to the prepetition employee lists and expanded access. Counsel for ALRB started arguing that the injunctive relief being sought was authorized by section 1160.4. Twice the court said: "I agree with you." Then: "I am willing to say I have got it. I can issue restraining orders [*sic*: injunctions]." Counsel for ALRB replied: "Fine. Shall we go on to the substance of it?" The court replied in the affirmative, and counsel for ALRB proceeded to argue the statutory purpose of section 1160.4 in relation to the facts at hand. She concluded her remarks at page 21 of the transcript. Counsel for UFW then presented a portion of his argument to the effect that the court's earlier ruling in the subpoena enforcement case permitting a grower (Carian) to get away with not complying with the prepetition employee list regulation had "done a good deal . . . to undermine this law [ALRA]." This argument concluded at page 22 of the reporter's transcript. The court replied: "I am not trying to frustrate the ALRB. *I was one of it's [sic] biggest sponsors whether you know it or not.* Maybe I better state my position and you will know what to argue to. [¶] I agree primarily in [*sic*] the law as stated by Ms. Lake [counsel for ALRB]. Under Section 1160.4 this court, not the board, has the jurisdiction, not the obligation to grant the board such temporary relief or restraining order as the court, not the board, deems just and proper. I have to look to see whether it is just or proper. Whereas here the board did not request such relief until months after the issuance of a complaint, where the board had alternate ways to get the same information, where the board waits until the peak of the harvest or election and a petition has not been filed, where the privacy rights of the workers are being invaded by the board, etc. and etc. This court cannot deem it necessary, just or proper to issue a restraining order. [¶] *I am not saying that the law isn't here. I am just saying it wasn't worked out properly in this particular case.* I think you all know that injunctive relief requires a balancing of equities and conveniences. The party seeking injunctive relief must come into court with clean hands. The public interest is always a factor and must be considered."[18] (Italics added.)

---

[18] The assertion in the dissent that these statements were made by the court "in response to the request for an order compelling . . . expanded access" does not comport with our reading of the transcript. It is true that in her remarks attempting to relate the facts at hand to the purposes of section 1160.4, counsel for ALRB used "for example" expanded access, but the quoted remarks of the court were provoked by the immediately preceding

The quoted remarks of the court concluded at page 23 of the transcript of the hearing. Thereafter the hearing continued sufficiently long to fill another 16 pages of transcript. So far as our reading of the transcript has revealed, validity of the regulation was mentioned only twice during the entire hearing. Following the second in which counsel for UFW referred to an earlier ruling of the court that the regulation was invalid, apparently either the order of June 6 (subpoena enforcement proceeding) or the order of June 17 (denial of temporary restraining orders), the court replied: "I want the record to reflect this, that I am not stating that I am right on the law and that Ms. Lake is wrong on the law. I am just saying right now, under these circumstances with the way this situation has been handled, with the history of it going back to March, I feel constrained not to issue the restraining order. I feel the board has to realize that the Superior Court is not working for the board. The Superior Court has to exercise its own discretion. If you want to find out what the law is, go to the district court of appeal. I am just saying, the facts presented to me, I am not issuing a restraining order. . . ."

Manifestly, the court exercised its discretion and determined that on the facts presented the injunctive relief sought was not just and proper. Had it intended to deny the relief sought on the basis of the invalidity of the regulation, there would have been no need for the lengthy hearing and the protracted argument. The judge had twice been called upon to consider the validity of the regulation in the preceding month. Moreover, the quoted statements of the court as well as its statement at the conclusion of the hearing (see text preceding and following fn. 30, *infra*)

---

assertions of counsel for UFW that the court's earlier ruling denying enforcement orders as to the subpoenaed employee lists had "done a good deal . . . to undermine this law [ALRA]."

However, whether the court's remarks related to an order for expanded access, an order concerning the prepetition lists or both is immaterial, and the significance the dissent attaches to the point betrays a failure to appreciate the significance of the requested orders for expanded access. There is no regulation authorizing *expanded* access. The orders of the board and the ALO giving UFW rights of expanded access were based on the determination that respondents had committed an unfair labor practice *by violating the prepetition employee list regulation.* Any decision by the court that the prepetition employee list regulation was invalid would require it to deny the requested order for expanded access just as well as the requested orders for a prepetition employee list. Thus, whether the court's remarks were made in connection with argument relating to expanded access or employee lists makes no difference. What is significant is that the court expressly indicated it intended to exercise its discretion and determine whether the requested injunctions were just and proper, belying the claim that the court's denial of injunctive relief was based on its conclusion the regulation was invalid and that the court failed to exercise its discretion.

affirmatively disclose that the trial court exercised its discretion and did not deny the injunctions sought on the basis of the invalidity of the regulation.

The foregoing is largely dispositive of appellants' related contention that the court felt it had no power to issue mandatory injunctions and therefore never reached the point of exercising its discretion. The court did refer to the mandatory nature of the injunctions sought in denying the temporary restraining orders, but that expression was joined with the court's statement that the requested relief had "nothing to do with temporarily maintaining a status quo" and immediately preceded the stated reason that the court had no jurisdiction "because 30 days . . . have not elapsed from the date of the ALRB order as required by Section 1160.8 . . . ." (See text accompanying fn. 10, *ante.*) What the court was attempting to impart to ALRB was that its request for temporary restraining orders and injunctions constituted an attempt to enforce in their entirety the nonfinal remedial orders of the Board and the ALO, which was not the purpose of section 1160.4. The court was entirely correct. ■ Undoubtedly, section 1160.4 authorizes the issuance of a mandatory injunction in appropriate circumstances. (See, e.g., *Angle* v. *Sacks, supra,* 382 F.2d at pp. 660-661; see also *Squillacote* v. *Local 248, Meat & Allied Food Wkrs., supra,* 534 F.2d at p. 739.) However, section 1160.4 was not intended as a means for interim enforcement of the "remedial" or "compensatory" aspects of Board's orders pending finality, but rather, to enable Board immediately and temporarily to put an end to conduct, usually ongoing or continuing in nature, which Board has reasonable cause to believe constitutes an unfair labor practice and which, if continued during adjudication of the unfair labor practice charges, might undermine or frustrate the purposes of ALRA. (See *Solien* v. *Merchants Home Delivery Service, Inc., supra,* 557 F.2d at pp. 625-626; *Squillacote* v. *Local 248, Meat & Allied Food Wkrs., supra,* 534 F.2d at pp. 741-742; *Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d at p. 1188; *Minnesota Mining and Manufacturing Company* v. *Meter, supra,* 385 F.2d at pp. 269-272; *Angle* v. *Sacks, supra,* 382 F.2d at pp. 659-661.)[19]

[19]That this was what the trial court was attempting to tell ALRB was apparently understood by it, for in its reply brief ALRB states: "Utilizing . . . section 1160.4, . . . the Board's petition for injunctive relief had requested the court to issue injunctions requiring the respondents to comply with decisions of the Board and an administrative law officer in unfair labor practice cases against the . . . respondents. In its June 17th order, the court held that the Board was, in effect, asking not for temporary injunctive relief, but rather for enforcement of the administrative decisions pursuant to section 1160.8 . . . . [¶] In

In any event, it is abundantly clear from the trial court's consideration of the substantive aspects of counsels' argument and from the court's statements during the hearing (see text preceding and following fn. 18, *ante,* and text preceding and following fn. 30, *infra*) that the court's denial of the requested injunctive relief was not based on any belief by the court that it lacked authority to issue a mandatory injunction.

*Incorrect Standard—Abuse of Discretion*

It is impossible to discuss separately appellants' contention that the trial court abused its discretion and their contentions that its determination was based on an erroneous standard or improper considerations, for their arguments appear to be directed not at one or the other, but at both.

■ The federal decisions under NLRA section 10(j) from which section 1160.4 is derived have fashioned a bipartite test for determining the propriety of temporary injunctive relief: (1) whether there is reasonable cause to believe that the unfair labor practice being prosecuted by Board has in fact occurred and (2) whether the injunctive relief requested is equitably necessary or, in the words of the statute, "just and proper." (*Solien v. Merchants Home Delivery Service, Inc., supra,* 557 F.2d at p. 626; *Boire v. Pilot Freight Carriers, Inc., supra,* 515 F.2d at pp. 1188-1189; *Boire v. International Brotherhood of Teamsters, etc., supra,* 479 F.2d at p. 787; *Minnesota Mining and Manufacturing Company v. Meter, supra,* 385 F.2d at pp. 270-271; *Angle v. Sacks, supra,* 382 F.2d at p. 660; *Fuchs v. Steel-Fab, Inc.* (D.Mass. 1973) 356 F.Supp. 385, 387.)

Placing considerable reliance upon the nonfinal decision and orders of the Board and the recommended decision and order of the ALO, appellants urge there was ample demonstration in the trial court of reasonable cause to believe respondents had in fact committed the unfair labor practices charged. Although we do so not entirely without reservation, we shall assume for purposes of decision that partial failure to comply with regulation 20910 may constitute an unfair labor practice and that reasonable cause to believe respondents had violated the regulation

direct response to this ruling, the Board decided to limit the relief sought by way of preliminary injunction at the order to show cause hearing set for June 24. Rather than seeking the complete relief originally requested, the Board pared down the injunctive relief sought to two elements: (1) compliance with the prepetition list regulation, . . . by the two respondents (Richard Peters Farms and Cy Mouradick & Sons) . . . and (2) expanded access by union organizers at the four respondents . . . (Peters, Mouradick, Harry Carian, and Coachella Vineyards)."

was shown.[20] When seeking temporary injunctive relief under section 1160.4, Board is not required to prove the charged unfair labor practice was in fact committed. The court is not called upon to decide the merits of the unfair labor practice charge which is pending before the Board; it need only appear there is reasonable cause to believe that the charged unfair labor practice has occurred. (See *Squillacote* v. *Local 248, Meat & Allied Food Wkrs., supra,* 534 F.2d at pp. 743-744; *Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d at pp. 1188-1189; *Boire* v. *International Brotherhood of Teamsters, etc., supra,* 479 F.2d at pp. 789-792; *McLeod* v. *Local 25, International Bro. of Elec. Wkrs., supra,* 344 F.2d at pp. 638-640.)

Appellants persistently discuss the trial court's determination that the injunctions sought were not just and proper in terms of its "failure to

[20]Technically, so far as the record discloses, there was very little in the way of factual data properly before the court relevant to the request for injunctions as to the employee lists and expanded access. The petition itself was unverified (cf. Code Civ. Proc., § 527) and the copies of the Board's decision and orders, and the recommended decision and order of the ALO were not a part of the formal petition. Copies were attached to the memorandum of points and authorities, but were in no way authenticated and were not final, and the recitation of facts in these documents relied on by ALRB constituted no more than hearsay statements. The only relevant declaration under penalty of perjury originally filed in support of the petition was that of Ruth Friedman pertaining to ALRB's one-day letter notice to respondents to supply employee lists for the week ending June 3, 1977. (See fn. 7, *ante,* and accompanying text.) The declarations by four UFW organizers filed the day before the hearing do contain some factual information but would hardly be sufficient in and of themselves to support the requested injunctions. The declaration of Arturo Rodriguez concerning Cy Mouradick & Sons sets forth the filing by UFW of its notice of intent to organize on January 26, 1977, and the employer's furnishing an employee list about March 7 with only post office addresses given for 30 of the 92 employees listed and addresses outside Coachella Valley given for another 28. The declaration of Liz Sullivan with respect to Harry Carian sets forth that UFW filed a notice of intent to organize on March 29, 1977; that an employee list was received April 6; but that of the 207 names on the list, there were post office addresses for 54 and addresses outside Coachella Valley for another 92. This declaration also informed the court that UFW had filed a petition for a certification election among the employees of Harry Carian and that the election was pending. The declaration of Ruth Shy in respect to Coachella Vineyards contains no factual information except that on June 22, 1977, UFW filed a petition for a certification election among the employees of Coachella Vineyards. The declaration of Eliseo Medina in respect to Richard Peters Farms states that UFW filed a notice of intention to organize on February 10; that the employer failed to submit a list until March 1; and that of the 50 employees named, post office addresses were shown for 30 and addresses outside Coachella Valley for another 19. It further states that a second notice of intent to organize was filed about March 29 in response to which an employee list was furnished by the employer on April 4, but of the 43 employees listed, post office addresses were shown for 21 and addresses outside Coachella Valley for 13.

Respondents, however, did not object to the form of the petition or the manner in which the decisions and orders of the Board and the ALO were presented to the court, and the court did not purport to make its ruling on the basis of these insufficiencies.

enforce the prepetition employee list regulation." (See fn. 12, *ante.*) Although counsel for both ALRB and UFW spoke in those terms on numerous occasions at the injunction hearing, that abstract question was not the question confronting the court. The court was asked to issue specific injunctions—injunctions commanding all respondents to comply with those provisions of the June 6 orders of Board and the ALO granting UFW expanded access and injunctions commanding two respondents, Cy Mouradick & Sons and Richard Peters Farms, to comply with those provisions of the June 6 orders relating to prepetition employee lists.[21] (See, e.g., fn. 19, *ante.*) The question confronting the court was whether the requested injunctions were as to the several respondents[22] just and proper. In attempting to review the trial court's determination that they were not, it is necessary to focus upon the specific injunctive orders the court was requested to make.

Virtually all of the considerations hereafter discussed in connection with the requested injunctions relating to the prepetition employee lists are equally germane to the injunctions sought to enforce the orders for

[21]At oral argument on appeal, counsel for ALRB insisted that injunctions were not being sought to enforce any part of the June 6 orders of Board or the ALO and that what was being sought was only some unspecified injunction to compel compliance with the prepetition employee list regulation. If that was the case, the court was fully justified in denying the request on the basis of lack of specificity alone. However, these assertions are contrary to the record which is accurately characterized in ALRB's closing brief. (See fn. 19, *ante.*) Certainly the court understood that it was being asked to issue injunctions enforcing portions of the orders of June 6; it expressly said to counsel for ALRB at one point during the injunction hearing: "You are tying it [injunctions against the two respondents concerning prepetition employee lists] to other orders that the Board made." Any possible doubt about the matter is removed by the fact that ALRB was seeking injunctions granting UFW expanded access rights. Neither regulation 20910 nor any other regulation prescribes expanded access rights, and that requested injunctive relief could only have had reference to the provisions in the orders of June 6 relating to expanded access. The facts are not altered by ALRB's attempt in its reply brief to abandon the appeal insofar as expanded access rights are concerned. Moreover, UFW has not abandoned its appeal as to the injunctions to enforce the orders for expanded access.

[22]Except in the declarations of the UFW organizers filed the day preceding the hearing, no effort was made by appellants in the trial court, nor is any made on appeal, to relate the specific facts concerning the several respondents to the injunctive relief sought with respect to that respondent. Except for the distinction between the injunctions concerning employee lists and the injunctions concerning expanded access, the injunctions were sought in gross. Whether temporary injunctive relief is just and proper depends on the facts and circumstances in the particular case. (See *Minnesota Mining and Manufacturing Company* v. *Meter, supra,* 385 F.2d at p. 270; *Angle* v. *Sacks, supra,* 382 F.2d at p. 660.) The procedure employed by ALRB in this case in seeking temporary injunctive relief against seven growers in gross in one petition and without attempting to direct the court's attention to the specific facts relating to each grower, is not conducive to a determination based on the particular facts and circumstances with respect to each grower, either in the trial court or on appeal.

expanded access. ■ However, the requested injunctions to enforce the expanded access orders (see fn. 6 and accompanying text, *ante*) are easily disposed of without lengthy discussion. The provisions of the June 6 orders granting UFW expanded access rights were conditioned upon UFW's filing as to each affected respondent "a written notice of intention to take access" pursuant to regulation 20900(e)(1)(B). Under the cited regulation, a notice of intent to take access covers a 30-day period. There was no evidence whatsoever that UFW had filed any notice of intent to take access with respect to any respondent in the two months preceding Board's application for injunctive relief. Equally crucial, there was no evidence whatever that UFW had attempted to exercise any expanded access right with respect to any respondent or that any respondent had failed to comply with the orders of June 6. Even in respect to final orders of Board, to obtain a judicial enforcement order the Board is required to show "that the person [to whom Board's order is directed] refuses to comply with the order." (§ 1160.8.) The trial court's denial of the requested injunctions to enforce the orders of June 6 with respect to expanded access was entirely proper.

As its request was "pared down" (see fn. 19, *ante*), ALRB sought injunctions enforcing the June 6 orders concerning prepetition employee lists only as to two respondents, Richard Peters Farms and Cy Mouradick & Sons. The orders sought to be enforced would have required these respondents to (1) "[c]ease and desist from . . . [r]efusing to provide the ALRB with an employee list as required by Section 20910(c) of the Regulations . . ."; (2) "[p]rovide the ALRB forthwith with the employee list due pursuant to the Notice of Intention to Organize filed by the UFW" with respect to Cy Mouradick & Sons on January 26, 1977, and with respect to Richard Peters Farms on Feburary 10 and March 29, 1977, as required by section 20910(c) of the regulations;[23] and (3) "[p]rovide the UFW with an employee list when the 1977 harvest begins and every two weeks thereafter."

■ Although the considerations hereafter discussed in connection with the requested injunctions to enforce order (3) are equally applicable

_____

[23]As to Richard Peters Farms this part of the order read: "Provide the ALRB with an employee list as required by Section 20910(c) of the Regulations . . . ." According to the evidence the only notices of intention to organize filed by UFW with respect to Richard Peters Farms were filed February 10 and March 29, 1977. (See fn. 20, *ante.*) Accordingly, the only prepetition employee lists "required" from Richard Peters Farms under the regulations were two, one for the payroll period immediately preceding February 10, 1977, and another for the payroll period immediately preceding March 29, 1977.

to the requested injunctions for enforcement of orders (1) and (2), little discussion is required to demonstrate that the court did not abuse its discretion in declining to grant temporary injunctive relief to enforce the latter. As to both orders (1) and (2), the only prepetition employee list due from Cy Mouradick & Sons pursuant to regulation 20910 was one for the payroll period immediately preceding January 26, 1977, the date UFW filed its notice of intention to organize, and the only lists due from Richard Peters Farms pursuant to the regulation were lists for the payroll periods immediately preceding February 10 and March 29, 1977, the dates on which UFW filed its notices of intention to organize. (See fns. 20, 23, *ante*.)[24] By the time of the hearing on June 24, these lists would have pertained to payroll periods approximately six months, four and a half months and two and a half months past, respectively. It was Board's consistent position and, indeed, the June 6 decision of Board expressly states, that an employee list for a payroll period more than one month past is virtually useless because of the exceedingly rapid turnover of employees. The court was not required to issue injunctions for the interim enforcement of nonfinal orders commanding respondents to provide three employee lists conceded to be of no use. There was no equitable necessity for them, and the court did not abuse its discretion in declining to issue injunctions for the enforcement of orders (1) and (2).

■ There remain to be considered only the requested injunctions for enforcement of the June 6 orders requiring Cy Mouradick & Sons and Richard Peters Farms to "[p]rovide the UFW with an employee list when the 1977 harvest begins and every two weeks thereafter," the order designated above as (3). Again, it is impossible to say that the trial court abused its discretion in declining to issue injunctions for the interim enforcement of these orders.

First, the showing of equitable necessity for issuance of these requested injunctions can only be characterized as poor. The orders commanding

---

[24]Assuming that it was physically possible for respondents to comply with ALRB's letter demand handed to their attorney on June 8 to furnish complete payroll lists of all their employees by 1 p.m. on June 9 covering the week ending June 3, 1977 (see text accompanying fn. 7, *ante*), these lists were not due under the regulations. UFW had filed no notices of intention to organize obligating respondents to furnish lists for that period, and the orders of June 6 did not contain an order requiring respondents to furnish employee lists for that payroll period. In addition, the orders of June 6 were not final, and, as respondents' attorney informed Board's representatives, respondents had not then decided whether to comply with the orders of June 6 or to seek review under section 1160.8. Subsequently, several of the respondents did petition this court for review, and several of those proceedings are now pending in this court.

these two respondents to supply UFW with biweekly employee lists during the harvest season were clearly compensatory in nature. There is no regulation of ALRB requiring an employer to supply a prepetition employee list directly to a labor organization; under regulation 20910 an employer is not required to provide more than one employee list in any 30-day period; and no regulation requires an employer to furnish any employee list in the absence of a notice of intention to organize accompanied by the signatures of at least 10 percent of the employer's agricultural employees. As already observed, section 1160.4 was not enacted as a means for interim enforcement of the compensatory aspects of Board's orders pending finality, but rather, to enable ALRB to obtain temporary injunctive relief pending litigation of unfair labor practice charges to put an immediate end to conduct, usually ongoing or continuing in nature, that it has reasonable cause to believe constitutes an unfair labor practice and which, if continued during adjudication of the unfair labor practice charges, might undermine or frustrate the purposes of ALRA. (See text and authorities cited preceding fn. 19, *ante.*)

There was no showing on the record that the alleged violations of regulation 20910 by Cy Mouradick & Sons or by Richard Peters Farms were ongoing. So far as appears from the record, Cy Mouradick & Sons was accused of one partial failure to comply with the regulation, and Richard Peters Farms was accused of two partial failures to comply with the regulation. (See fns. 4, 20 and 23 and accompanying text, *ante.*) In all three instances the alleged partial failures to comply with the regulation were based on conduct several months before the application for injunctive relief.[25] (See fn. 20, *ante.*)

Further, there was no convincing demonstration that the purposes of ALRA would be frustrated unless injunctions were issued to enforce these orders. On the contrary, the court was advised at the hearing that UFW had filed petitions for certification elections with respect to a number of respondents, that an election was scheduled in three days with respect to the employees of respondent Carian, that several more elections were scheduled in the next few days with respect to employees of several other unspecified respondents and that, in all, five elections were scheduled.[26] The scheduling of a representational election is

[25]As previously noted, neither any regulation nor the orders of June 6 required respondents to comply with ALRB's letter demand on June 8 that they furnish complete employee lists with respect to the week ending June 3, 1977. (See fn. 24, *ante.*)

[26]In its reply brief ALRB states that it was seeking injunctions with respect to prepetition employee lists only with respect to the two respondents "where organizing

triggered, of course, by the filing of a petition for certification signed by or accompanied by authorization cards signed by a majority of the employees of the designated employer. (§ 1156.3 [see fns. 1 and 2, *ante*].) Once a petition for certification is filed, regulation 20310(a)(2) requiring the employer to furnish a postpetition employee list becomes operative (see fn. 1, *ante*) and regulation 20910 pertaining to prepetition employee lists is completely inapplicable. There was no evidence whatsoever that any respondent had failed to supply the required postpetition employee list.[27] The fact that UFW had been successful in communicating with sufficient numbers of respondents' agricultural employees to obtain the signatures of a majority of them with respect to at least three of the original respondents and perhaps as many as five gives rise to a reasonable inference supporting the court's statement to the effect that the information necessary to communicate with respondents' agricultural employees was otherwise available to Board and UFW and its conclusion that there was no urgent necessity for interim enforcement of these orders pending their finality.

The protracted delay of ALRB in seeking temporary injunctive relief was itself evidence that there was no urgent necessity for the enforcement of these orders on an interim basis. The complaints charging unfair labor practices were filed against Cy Mouradick & Sons February 14 and against Richard Peters Farms April 26, 1977. (See fn. 4, *ante*.) ALRB could have sought temporary injunctive relief immediately upon the filing of these complaints. (§ 1160.4.) ALRB did not file its petition seeking injunctive relief until June 10. By the time the matter was heard on June 24, within two to four weeks the June 6 orders would be either enforceable as final orders or be under review in the Court of Appeal, in

was still occurring but where no election petition had been filed." By studying both the reporter's and clerk's transcripts for several hours and tabulating the various statements made concerning elections during the hearing and the statements in the declarations filed June 23, we have been able to verify this fact, but it was certainly not made clear to the trial court at the time of the hearing. The declarations indicated election petitions had been filed with respect to Carian and Coachella Vineyards (see fn. 20, *ante*). At the hearing there were scattered references to elections scheduled for the following Monday with respect to a grower originally named as a respondent but not a party to this review (Moreno) and with respect to Carian. Otherwise, counsel for ALRB stated in the course of argument, ". . . so that in order at this late date, in some cases three or four days left to elections or two days left or two other cases several weeks left in the harvest season . . . ." Counsel for UFW stated: "We have five elections scheduled in this valley." Thus the court was advised that five elections were pending, but it was entirely unclear which respondents were affected.

[27]There were statements of counsel indicating there was a dispute between UFW and Carian as to the precise period to be covered by its postpetition employee list.

which event the Court of Appeal and not the superior court would be empowered to provide temporary injunctive relief. (§ 1160.8.)

In addition, as a result of ALRB's delay, the utility of the requested injunctions was doubtful to say the least. The injunctions would be enforceable only through utilization of the court's contempt power; the respondents would be entitled to litigate in any ensuing contempt proceedings their claim that they had complied with regulation 20910 or that, alternatively, they lacked the ability to comply fully, not to mention the claimed invalidity of the regulation. Even assuming a decision in the contempt proceedings favorable to ALRB, by the time the matter was litigated and the determination made, the short harvesting season, which was at its peak at about the time ALRB filed its petition for injunctive relief, would be over. ALRB's petition itself alleged that the ALO's orders would not be final for 20 days (from June 6) by which time the harvest season would be far advanced or over and the lists of no use. It was already June 24 when the hearing took place.

ALRB is perfectly correct in contending that under section 1160.4 temporary injunctive relief can be granted by the superior court at any time after an unfair labor practice complaint has been filed until Board's order has become final or been accepted for review under section 1160.8. Nevertheless, Board's delay in seeking relief, the relatively short time left until the June 6 orders would either be final or under review in the Court of Appeal and the doubtful efficacy of the requested injunctions were factors the trial court was entitled to consider in determining whether the injunctions requested were just and proper. (See *Solien* v. *Merchants Home Delivery Service, Inc., supra,* 557 F.2d at pp. 625-627; *Angle* v. *Sacks, supra,* 382 F.2d at pp. 660-661; *Fuchs* v. *Steel-Fab, Inc., supra,* 356 F.Supp. at p. 388.)

Appellants also urge that in considering the nature of respondents' defaults and the availability to ALRB and UFW of alternative means of securing the desired information, the court improperly substituted its judgment for that of ALRB, whose prerogative it was to weigh the availability of alternative means of securing the desired information at the time it decided to promulgate regulation 20910 and whose prerogative it was to determine whether the lists supplied by respondents complied with the regulation. ■ It is perfectly true that in reviewing an administrative regulation for validity, a court may not substitute its judgment for that of agency as to the weight to be given alternative means

of effecting the purpose of the statute the agency is charged with administering. "[T]he court will defer to the agency's expertise and will not 'superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision.' [Citation.]" (*Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d at p. 411.) ■ That does not mean, however, that a court may not consider alternatives available to the agency in determining whether specific requested injunctive relief is just and proper or necessary. Similarly, although it is the exclusive prerogative of Board, subject to judicial review, to determine whether given conduct complies with its regulations, the court is certainly entitled to consider the nature of the unfair labor practice committed in determining whether the temporary injunctive relief sought is just and proper. The court may properly consider any fact relevant to the question whether the requested relief is just and proper, including the nature of the alleged unfair labor practice (i.e., whether it is violent, coercive, etc., and whether it is ongoing or consisted of a single act), its probable effect in relation to the status quo and the statutory objectives, the nature of the relief sought, the timing of the request, the circumstances of the parties, and the probable effects upon them of the order requested. (See *Solien* v. *Merchants Home Delivery Service, Inc., supra,* 557 F.2d at pp. 625-627; *Squillacote* v. *Local 248, Meat & Allied Food Wkrs., supra,* 534 F.2d at p. 744; *Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d at pp. 1192-1194; *Boire* v. *International Brotherhood of Teamsters, etc., supra,* 479 F.2d at p. 788; *Minnesota Mining and Manufacturing Company* v. *Meter, supra,* 385 F.2d at pp. 270-273; *Angle* v. *Sacks, supra,* 382 F.2d at pp. 660-661; *Fuchs* v. *Steel-Fab, Inc., supra,* 356 F.Supp. at pp. 387-388.)

Finally, quoting excerpts from statements of the trial court during the injunction hearing, appellants contend that none of the foregoing were the real reasons the court denied the requested injunctive relief and that the court's real reasons were that it did not like the prepetition employee list regulation and thought the regulation was unnecessary. Again, appellants contend that the court was not entitled to consider whether or not the regulation was necessary and that in so doing it improperly substituted its judgment for that of ALRB to whose expert judgment the necessity for the regulation was committed. ■ In determining the validity of an administrative regulation the court may determine whether the regulation is "reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11374; *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d at p. 411.) However, as appellants assert,

that question does not present a matter for independent judgment of the court; it comes to the court " 'freighted with the strong presumption of regularity accorded administrative rules and regulations' " (*Agricultural Labor Relations Bd.* v. *Superior Court, supra*), and is a question in respect to which the court will defer to the agency's expertise. (*Agricultural Labor Relations Bd.* v. *Superior Court, supra*; *Ralphs Grocery Co.* v. *Reimel, supra*, 69 Cal.2d at p. 179; *Pitts* v. *Perluss, supra*, 58 Cal.2d at p. 832.)

Considered in isolation, several of the excerpted statements of the court might be understood as giving color to appellants' contentions.[28] However, a reading of the full reporter's transcript and a consideration of these statements in context and in light of the setting in which they were made and the other statements of the court, indicate persuasively that the trial court's denial of the request for interim injunctive relief was based on proper considerations.

As previously mentioned several times, the trial judge had some weeks earlier presided at the hearing on ALRB's application for subpoena enforcement orders with respect to Carian and Laflin and had denied the application. (See fn. 14, *ante.*) On June 10, he had denied the requested temporary restraining orders. At the injunction hearing on June 24, the judge was accused by counsel, primarily Mr. Nathan, the attorney for UFW, of attempting to frustrate ALRB's efforts to enforce the prepetition employee list regulation and of undermining the efficacy of ALRA (see fn. 18, *ante,* and accompanying text). Indeed, Mr. Nathan, who was participating in the hearing by the grace of the court, accused the judge of

---

[28]Some of the excerpted statements of the court are:

(1) "There are two things that are important to me. Number one is to get this harvest down and number two, to get an election, and I'm not going to sit around and listen to a lot of red tape. This has been the quietest, most peaceful harvest that I have seen around here in a long time. That is a big step in the right direction. Hopefully, and I will do what I can to make these elections go down, but I am not going to issue restraining orders in this particular case, because it is up to my discretion. My discretion doesn't lean toward the board. They have got to be impartial and I have seen everything else but that."

(2) "I am not any more for the grower than I am for the union or anybody else and this is, has been a history of my sitting on these matters and I defy anyone else to say otherwise. [¶] This is the way it's going to be in my court and it is my discretion to issue these orders. If I don't feel I should issue them, I'm not going to and that is the way it is going to be."

(3) "You are tying it in to other orders that the board made. You are penalizing, the board is penalizing the grower for not carrying out an order that I feel that I am not going to enforce. You can go to some other judge. You can go to the district court of appeals. You can issue any order you want to order, but you are not going to get a restraining order out of me. That is my discretion, not your discretion and I don't deem it necessary or just under the circumstances."

permitting the growers to use the judge as their "pawn" and asserted the court was the growers' "dupe." Unfortunately, perhaps, but not too surprisingly, the court reacted to these unseemly accusations. At various times during the hearing the judge expressed his disappointment with the practical operation of ALRA and the Board's administration of the act; he voiced his concern that the act was not being administered in an even-handed fashion and his feeling that Board's delaying several months after the unfair labor practice complaints had been filed until the peak of the harvest season to seek injunctive relief was oppressive. Additionally, in response to counsels' persistent but erroneous assertions that ALRB had considered all of the competing factors and made all of the pertinent determinations and that the court was not permitted to substitute its judgment for that of the Board, the court repeatedly but quite correctly informed counsel in rather blunt terms that it is the court that must determine whether the requested injunctive relief is just and proper, not the Board nor counsel.

The transcript fairly read as a whole and considered in light of the foregoing background indicates convincingly that the preeminent reasons for the court's order denying the temporary injunctions were the court's belief it was being asked in effect to enforce the "compensatory" provisions of the Board's and the ALO's nonfinal orders which should more appropriately await finality and enforcement under section 1160.8 and its conclusion that, not the regulation, but the requested injunctive relief was unnecessary[29] and not just and proper under the circumstances disclosed, particularly ALRB's protracted delay in seeking the injunctions and the fast-approaching date for finality of the orders or their review in the Court of Appeal, and the ALRB's failure to show that issuance of the injunctions was required to avoid frustration of the purposes of ALRA.

Several statements of the court so indicating have already been noted. (See text preceding and following fn. 18, fn. 29, *ante.*) The court's concluding statement at the injunction hearing confirms that these were the bases for its ruling. It stated:

---

[29]When the argument concerning the injunctions pertaining to employee lists was concluded the court said: "I have stated it four times. I am saying it again, right now, that I don't think it's necessary to the extent that I should issue restraining orders [*sic*: injunctions] . . . ." In its concluding statement (see text accompanying fn. 30, *infra*) the court reiterated: "If I think a restraining order is necessary and proper, if I deem it just, I will issue it. That goes either way. I just don't feel it is here. I so find."

"I can assure you I will lend every aid within my power as a judge to see that you get your election and I will further state so far as Mr. Smith [respondents' attorney] is concerned, that if he frustrates the law so far as the lists are concerned and lists that are properly required, he's going to answer to this court, or his clients, I should say. I realize there is manipulation going both ways and also I realize and accept the fact that it is a tremendously difficult job for the board and for the board's counsel and I wouldn't accept the proposition, make a finding that the board is inept or its personnel is inept.[30] We have asked a lot of them this particular year, but I think that they have to learn that they are judges [*sic*: not judges] in this type of situation. If I think a restraining order is necessary and proper, if I deem it just, I will issue it. That goes either way. I just don't feel it is here. I so find."

*Disposition*

No abuse of discretion or cause for reversal appears. The orders are affirmed.

McDaniel, J., concurred.

**TAMURA, Acting P. J.**—I concur in the affirmance of the trial court's order insofar as it denies the Agricultural Labor Relations Board's request for enforcement of the expanded access required by the board's decision and the administrative law officer's (ALO) recommended decision. I respectfully dissent, however, from the affirmance of the denial of the requested injunctive order compelling two of the respondents to comply with the board's prepetition list regulation contained in section 20910 of title 8 of the California Administrative Code. In my opinion the court abused its limited discretion under Labor Code section 1160.4 in denying that portion of the board's requested relief.

The ALO and the board found respondents guilty of unfair labor practices in failing to comply with the requirements of regulation 20910. The board issued and the ALO recommended remedial orders which included an order that respondents "[c]ease and desist from: (a) Refusing to provide the ALRB with an employee list as required by section 20910(c) of the Regulations of the Agricultural Labor Relations Board."

---

[30]During the hearing, UFW's attorney had asserted that ALRB's enforcement of ALRA was inept.

Although the board initially petitioned for judicial enforcement of all remedial orders, prior to the order to show cause hearing it filed a supplemental memorandum in which the requested relief was reduced to two items: (1) "[A]n injunction as to two of the seven respondents . . . ordering them to comply with the prepetition list regulation. 8 Cal.Admin.Code, § 20910(c)" and (2) that four of the respondents be required to provide expanded access. That this was the extent of the relief sought was reaffirmed by counsel for the board during the show cause hearing. That the judge must have so understood the board's request is confirmed by his minute order which states: "Plff.'s request for Order Complying with Employee List Regulation and Expanded Access is DENIED."

Although the board appealed from the entire minute order, in its brief it has expressly "withdrawn" its appeal from that portion of the order pertaining to expanded access.[1] Accordingly, the only issue on this appeal is whether the trial court abused its discretion in denying injunctive relief to compel the two respondents to comply with the requirements of regulation 20910. In my opinion there was a manifest abuse of discretion.

A fair review of the record demonstrates beyond question that the judge's decision to deny the requested order to compel compliance with the regulation was based primarily, if not entirely, on his view that the regulation was invalid. The same judge had so expressed himself in an earlier proceeding when he denied the board's application for an order to enforce compliance with a subpoena duces tecum issued by the board requiring respondents to produce records in connection with the board's investigation of the unfair labor practice charges against respondents for failure to comply with regulation 20910. And, in his minute order denying a temporary restraining order in the instant proceeding, the judge set forth the following reasons why he thought the regulation was invalid: The federal law does not require an employee list until a valid petition for election has been filed; the board's regulation is "not reasonably necessary"; and the regulation infringes upon the employees' right of privacy. Those views permeate the judge's comments during the order to show cause hearing. For example, he stated that he had been trying to follow the "NLRA" whereas the board has not; that under the "NLRA" a prepetition list requirement has not been found to be necessary; that the board, in his opinion, "jumped over NLRA to pick up any rules when they think it's necessary"; that until an election petition

[1] The United Farm Workers' brief on appeal makes but a token attack upon the court's refusal to issue an injunctive order compelling respondents to grant expanded access.

has been filed, it is not necessary to require a list of employees; and that the regulation fails to take into account the right of privacy of the employees.

The judge's statements quoted extensively by the majority in an attempt to show that the judge did not base his decision on the assumed invalidity of regulation 20910 were made in response to the request for an order compelling certain of the respondents to provide expanded access. The record shows that the quoted remarks were made after counsel for the board concluded her argument "as to expanded access for the four respondents" and before she addressed the issue of the requested injunctive order compelling two of the growers to comply with regulation 20910. When it came to that limited request, the judge stated that he would not grant such an order, that he had previously "gone over this with two or three" of the board's attorneys and that he was not going to change his mind "unless you come in with some new law." The judge was obviously referring to the prior occasions on which he had expressed the view that the regulation was invalid, including his denial of an order compelling compliance with the subpoena duces tecum and his denial of a temporary restraining order in the instant case. The judge's comments which are quoted by the majority at the close of its opinion are consistent with the position he had taken throughout the proceedings that the prepetition list requirement was unnecessary and invalid. In the quoted comments, the judge vowed that he would see that the elections were held and that "lists that are properly required" would be required to be furnished, the clear implication being that prepetition lists are not properly required.

The conclusion is inescapable that the judge refused to compel compliance with the prepetition list requirement because he thought it was invalid. I, therefore, cannot agree with the majority's refusal to decide the validity of the regulation on the ground the requested injunctive relief "was clearly not based on a determination that the regulation was invalid. . . ." Since the judge's view that the regulation was invalid was the major, if not the decisive, reason for his decision to deny an order compelling compliance with the regulation, that issue is squarely presented on this case. This court (a different panel, with one member dissenting and with the same author writing for the majority) declined to pass on the validity of the regulation in a prior mandate proceeding brought by the board to set aside the trial court's order refusing to compel compliance with a subpoena duces tecum (*ALRB* v.

*Superior Court (Laflin),* 4 Civ. 19156). Continued refusal by this court under one pretext or another to pass on the validity of the regulation can only encourage disregard of its provisions. The board, the interested parties, and trial judges should not be left to speculate on the validity of the regulation. The issue is squarely before this court; it has been fully briefed by all parties; this court should decide it.

I, for one, have no doubts concerning the validity of the regulation. In *Excelsior Underwear, Inc.,* 156 N.L.R.B. 1236, the NLRB adopted a requirement that after an election has been directed, the employer must file with the NLRB a list containing the names and addresses of all eligible voters, which list is then transmitted to the union's managers to be used for organizational and comportment purposes. The validity of the *Excelsior* disclosure requirement was upheld by the United States Supreme Court in *NLRB* v. *Wyman-Gordon Co.,* 394 U.S. 759 [22 L.Ed.2d 709, 89 S.Ct. 1426], on the ground that it prompted the fair and free choice of bargaining representatives. Unlike the *Excelsior* rule which was announced in a board decision, the ALRB rule was promulgated pursuant to a duly adopted administrative regulation based upon express statutory authority. Labor Code section 1157.3 provides: "Employers shall maintain accurate and current payroll lists containing the names and addresses of all their employees, and shall make such lists available to the board upon request." The board's power to adopt the regulation may also be implied from its general rule making power (§ 1144), the declaration of state policy set forth in section 1140.2, and the provisions of section 1152 enumerating employees' rights to self-organization and collective bargaining. The prepetition list requirement regulation is in my opinion clearly valid.

Since it is apparent that the judge's view respecting the validity of the regulation was a significant, if not the controlling, factor in his decision to deny the board's request for an order requiring compliance with the regulation, his refusal to so order manifestly constituted an abuse of discretion. Judicial discretion must be grounded in " 'reasoned judgment' " complying with " 'legal principles and policies appropriate to the particular matter at issue.' " (*Bullis* v. *Security Pac. Nat. Bank,* 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109], quoting from *People* v. *Russel,* 69 Cal.2d 187, 195 [70 Cal.Rptr. 210, 443 P.2d 794].) A discretionary

judicial decision grounded in substantial part on an erroneous legal premise cannot stand as a valid exercise of discretion.

I would reverse that portion of the trial court's order denying injunctive relief to compel two of the growers to comply with the prepetition list regulation. Otherwise, I would affirm.

Petitions for a rehearing were denied March 13, 1979. Tamura, J., was of the opinion that the petitions should be granted. The petitions of all the appellants for a hearing by the Supreme Court were denied May 17, 1979. Bird, C. J., did not participate therein.