557 F.2d 622
 95 L.R.R.M. (BNA) 2596, 81 Lab.Cas. P 13,246
 Joseph H. SOLIEN, Regional Director of the Fourteenth Region
of the National Labor Relations Board for and on
Behalf of the National Labor Relations
Board, Petitioner-Appellant,
v.
MERCHANTS HOME DELIVERY SERVICE, INCORPORATED, Respondent-Appellee.
 No. 76-1700.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1977.
Decided June 2, 1977.
 
 Alan R. Fener, N.L.R.B., Washington, D. C., for appellant; Joseph E. Mayer, Lee Modjeska, John S. Irving, Jr., John E. Higgins, Jr., and Harold J. Datz of N.L.R.B., Washington, D. C., on brief.
 D. J. Sullivan, St. Louis, Mo., for appellee.
 Before HEANEY and ROSS, Circuit Judges, and STUART,* District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 The National Labor Relations Board appeals from an order denying its petition for a temporary injunction requiring Merchants House Delivery Service to bargain collectively with the Teamsters Local Union No. 688, pursuant to § 10(j) of the National Labor Relations Act. 29 U.S.C. § 141 et seq. We affirm.
 
 
 2
 In November, 1973, the Compton Service Company entered into a three-year collective bargaining agreement with Teamsters Local Union No. 688. The agreement covered all furniture and appliance truck drivers, helpers and warehouse employees. Compton's principal business was the warehousing and delivery of furniture and appliances for J. C. Penney and other companies.
 
 
 3
 Under pressure to reduce delivery costs by going non-union, Compton commenced a campaign to undermine the Union in early 1975. As part of this campaign, Compton organized a new corporation, Am-Del-Co, Inc., through which the owner-operator service would be provided.
 
 
 4
 On July 8, 1975, Am-Del-Co submitted an owner-operator proposal to Penney's. The proposal was accepted and, on September 2, Am-Del-Co began delivery of Penney's goods from the Compton warehouse. Deliveries were made in Compton trucks under lease to Am-Del-Co. Thereafter, the Board issued a complaint against the companies and applied for an order restraining the companies from violating the Act.
 
 
 5
 On December 31, 1975, the District Court, after hearing, issued a temporary injunction restraining Compton and Am-Del-Co from laying off or discharging employees, from converting their status to independent contractors and from refusing to bargain with the Union. No appeal was taken from the court's order.
 
 
 6
 On January 6, 1976, Penney's cancelled its contract with Am-Del-Co and Compton and met with representatives of Merchants. On the following day, it entered into a delivery service contract with Merchants. Under the agreement, Penney's agreed "to indemnify * * * Merchants * * * (for) any * * * liability * * * or by reason of action * * * wherein that it is alleged by any Party that * * * Amdelco (sic) or * * * their successors * * * has violated * * * the National Labor Relations Act * * * ."
 
 
 7
 On January 10, 1976, officers of Merchants met with the drivers employed by Am-Del-Co and proposed that they (the drivers) become independent truck owners. Under this arrangement, the drivers were to deliver Penney's merchandise and receive sixty percent of the gross, with Merchants receiving the balance.
 
 
 8
 On January 12, 1976, nine former Am-Del-Co drivers signed Independent Truckers' Agreements. Shortly thereafter, they began delivering Penney's merchandise under the new contract.
 
 
 9
 On January 21, 1976, Merchants refused the Union's request to bargain with Merchants on behalf of the drivers. On February 26, the Teamsters filed an unfair labor practice charge against Penney's and Merchants alleging violations of §§ 8(a)(1) and (5).[1] A complaint was issued by the Board on June 22, 1976. Nine days later, the Board filed a petition with the District Court requesting that a temporary injunction be issued requiring Merchants to bargain with the Teamsters pending final disposition of the charge by the National Labor Relations Board. The District Court scheduled a hearing on the temporary injunction for July 16.
 
 
 10
 On July 19, the Administrative Law Judge conducted a hearing on the complaint.
 
 
 11
 On July 28, the District Court, Judge Meredith presiding, denied the requested injunction:
 
 
 12
 (1) because the matter was one to be determined by the Board;
 
 
 13
 (2) because of the long delay between the filing of the charge, February 26, 1976, and the request for the temporary injunction, July 1, 1976; and
 
 
 14
 (3) because the Administrative Law Judge had heard the matter.
 
 
 15
 A notice of appeal to this Court was filed on August 12, 1976, and the matter was heard at the January, 1977, Term of Court.
 
 
 16
 The decision of the Administrative Law Judge was published on December 19, 1976. He found that the owner-operators were employees within the meaning of the Act; that Merchants was the successor to Comptons and its alter ego, Am-Del-Co; that the Union represented a majority of the drivers on the date it requested Merchants to bargain; and that Merchants' refusal to bargain on that date violated §§ 8(a)(1) and (5) of the Act. He recommended that Merchants be ordered to cease and desist from unlawfully refusing to bargain with the Teamsters Local Union No. 688 as the exclusive agent of Merchants' "owner-operators delivering furniture and appliances for the J. C. Penney Company in St. Louis, Missouri" and on request to bargain with the Union and to post appropriate notices.
 
 
 17
 Exceptions to the Administrative Law Judge's decision were filed. The matter is still pending before the Board.
 
 
 18
 The question of when and under what circumstances a § 10(j) injunction should issue remains a difficult one. That section reads as follows:
 
 
 19
 The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.
 
 
 20
 29 U.S.C. § 160(j).
 
 
 21
 The Senate report accompanying the bill indicates congressional concern that delays inherent in the administrative process may, on occasion, frustrate the Act's remedial objections. The report stated:
 
 
 22
 Time is usually of the essence in these matters and consequently the relative slow procedure of the Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objective the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the cases of all types of unfair labor practices. * * *
 
 
 23
 Experience under the National Labor Relations Act has demonstrated that by reason of lengthy hearing and litigation enforcing its order, the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done. * * * (I)t has sometimes been possible for persons violating the Act to accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or preserve the status quo pending litigation.
 
 
 24
 By Section 10(j) the Board is authorized, after it has issued a complaint alleging the commission of unfair labor practices by either an employer or a labor organization or its agent, to petition the appropriate district court for temporary relief or restraining order.
 
 
 25
 Senate Report No. 105, 80th Cong., 1st Sess. 8, 27 (1947).
 
 
 26
 The Board's stated standards for determining whether a § 10(j) proceeding is warranted are set forth in an August 14, 1975, report of the General Counsel:
 
 
 27
 In determining whether the institution of 10(j) proceedings is warranted, the major consideration is whether the alleged unlawful conduct made subject of a complaint is likely to frustrate the Board's remedial processes in the absence of interim injunctive relief. And this is related to whether the unfair labor practices involved can be effectively remedied, and the status quo restored, by a Board order and its subsequent enforcement by a court of appeals. Other pertinent considerations include the clarity of the alleged violation, the impact of the unfair labor practices on the public interest, the widespread or repetitious nature of the alleged violations, and the impact of the alleged unfair labor practices on the charging party and employee rights under the Act.
 
 
 28
 This Court has stated that a twofold showing must be made before a District Court may grant injunctive relief under § 10(j): first, that there is reasonable cause to believe that the Act has been violated; and second, that injunctive relief is reasonably necessary to preserve the status quo or to prevent frustration of the basic remedial purposes of the Act. Minnesota Mining and Manufacturing Company v. Meter, 385 F.2d 265 (8th Cir. 1967). Accord, Seeler v. Trading Port, Inc., 517 F.2d 33 (2nd Cir. 1975); Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185 (5th Cir. 1975), cert. denied, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976); Angle v. Sacks, 382 F.2d 655 (10th Cir. 1967). Our review is limited to determining whether the District Court's finding with respect to a probable violation of the Act is clearly erroneous and whether the District Court abused its discretion in granting or denying injunctive relief for the probable violation. Minnesota Mining and Manufacturing Company v. Meter, supra at 269.
 
 
 29
 We have some difficulty in reviewing the District Court's decision since no finding was made with respect to a probable violation of the Act. Rather, the opinion merely states that "the matter was one to be determined by the Board." This finding is clearly erroneous. While the initial responsibility to determine whether the Act has been violated lies with the Board, the trial court in a § 10(j) proceeding must also make a finding as to reasonable cause, or lack thereof, and it failed to do so. Were this the sole basis for the trial court's decision, we would have no alternative but to reverse because we cannot say on the basis of this record, as a matter of law, that the Board failed to show reasonable cause for believing that the Act had been violated.
 
 
 30
 Our difficulty is compounded by the District Court's inadequate finding as to whether an injunction was necessary to preserve the status quo or to prevent frustration of the basic remedial purposes of the Act. The court spoke only in terms of delay. The court may have felt that the Board delayed so long in seeking injunctive relief that the remedial purposes of the Act had already been frustrated and could not be cured by an interlocutory order. In the alternative, it may have felt that the matter had progressed so far with the Board that interlocutory relief was unnecessary.
 
 
 31
 It cannot be denied that there are delays in § 10(j) proceedings before the Board. Its workload, like those of the federal trial and appellate courts, is very heavy. Whether these delays should be considered in denying injunctive relief is another question.
 
 
 32
 Two Circuits have dealt with the matter and both have stated that Board-occasioned delays may be considered under certain circumstances in determining whether an injunction is necessary to preserve the status quo or to prevent frustration of the remedial purposes of the Act. In Angle v. Sacks, supra, where the delay was approximately ninety days, the Court said:
 
 
 33
 It would appear that much of the problem presented to the trial court, and the difficulty caused by the mandatory nature of the order arose from the delay by the Board in seeking the remedy. The more time that elapses between the time the incidents occur the less effective injunctive relief becomes, and it becomes increasingly difficult to show it to be a "just and proper" remedy. This could, of course, reach a point where relief should be denied on that ground alone.
 
 
 34
 Id. at 661.
 
 
 35
 In Boire v. Pilot Freight Carriers, Inc., supra, where the delays were also about ninety days, the Court said:Nor did the district court abuse its discretion in failing to order reinstatement of the two employees arguably discharged for union activity. The Board waited three months before petitioning the district court for temporary relief. Although the time span between commission of the alleged unfair labor practices and filing for § 10(j) sanctions is not determinative of whether relief should be granted, it is some evidence that the detrimental effects of the discharges have already taken their toll on the organizational drive. It is questionable whether an order of reinstatement would be any more effective than a final Board order at this point. See Note, 44 N.Y.U.L. Rev. 181, 197 (1969)(.)
 
 
 36
 Id. at 1193.
 
 
 37
 We agree that delay may be considered but only in the sense indicated in Boire, i. e., where the delay is of such a character that a final Board order is likely to be as effective as an interlocutory court order. We obviously cannot deny relief for delay as a means of expressing our displeasure with the Board. To take that attitude would be to deprive employees of their statutory rights for reasons entirely beyond their control.
 
 
 38
 Viewed in this light, we would hold, if we were considering the matter initially, that the delay here was not of such a character that injunctive relief should be denied for that reason. We recognize that Merchants might well have refused to obey an interlocutory court order and might have taken an appeal to this Court, and that such an appeal would have resulted in further delay. But we, at least from our perspective at this time, would have felt that an interlocutory order if otherwise required would be more apt to give prompt relief than a final Board order.[2]
 
 
 39
 But, we cannot view the matter de novo and can only reject the trial court's denial of injunctive relief if the denial was an abuse of discretion. We cannot say that it was. The Administrative Law Judge had completed a hearing at the time the matter was before the District Court. The Court could expect that the Administrative Law Judge's recommendations would be rendered promptly and that the Board would accelerate its disposition of the case.
 
 
 40
 To avoid further delay, this Court will, on a petition for review or enforcement, hear the matter on an expedited basis. To this end, either party may, at the appropriate time, make application for an expedited proceeding.
 
 
 41
 Affirmed.
 
 
 
 *
 The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 On June 14, 1976, the National Labor Relations Board approved the withdrawal of the charge against Penney's
 
 
 [2]
 We are not at all sure that the Board can, under existing procedures, bring actions in § 10(j) proceedings in less than three or four months from the date of the alleged unfair labor practice. A charge must first be filed. It must then be investigated by the Regional Office of the Board; the Regional Office must prepare and serve a complaint. If the Regional Director feels that a § 10(j) injunctive proceeding is required, he must secure permission from the Board, whose internal operating procedures are cause for some delays. When permission is secured, an injunctive proceeding can be undertaken. In contrast, a Regional Director can institute an injunctive proceeding under § 10(1 ) without first issuing a complaint or securing permission from the Board. Under current standards enunciated by the General Counsel, § 10(l ) proceedings should ordinarily be filed within nine days from the date on which the charge is filed. NLRB, Interim Report and Recommendations of the Chairman's Task Force on the NLRB, § IX at 74-82 (1976)