**F. Rozier SHARP, Regional Director for Region Seventeen of the National Labor Relations Board, For and On Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LA SIESTA FOODS, INC., Respondent.**

**No. 94–4111–RDR.**

United States District Court,
D. Kansas.

July 11, 1994.

Mary G. Taves, Constance C. Traylor, National Labor Relations Board, Overland Park, KS, for plaintiff.

## *MEMORANDUM AND ORDER*

ROGERS, District Judge.

Petitioner F. Rozier Sharp, Regional Director for Region 17 of the National Labor Relations Board ("Regional Director"), for and on behalf of the National Labor Relations Board (NLRB or Board), seeks a temporary injunction pursuant to Section 10(j)[1] of the National Labor Relations Act (Act), 29 U.S.C. § 160(j), restraining respondent La Siesta Foods, Inc. (La Siesta) from engaging in certain acts and conduct pending final resolution by the Board of certain unfair labor practices charges filed by the petitioner against the respondent. The court has conducted a hearing on the petitioner's petitioner for temporary injunction and is now prepared to rule. This memorandum and order shall constitute the court's findings of fact and conclusions of law.

---

1. Section 10(j) provides as follows:

The Board shall power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transact business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

La Siesta Foods is engaged in the business of producing Mexican food products. The company has a facility located in Topeka, Kansas. In September 1993, Stephanie Oviedo, an employee of La Siesta Foods, contacted Bradford Schmidt, the business representative of the Bakery, Confectionery & Tobacco Workers International Union Local 218 (the union), concerning possible union representation. Schmidt later met with Stephanie and her husband, Andres Oviedo, who was also employed by La Siesta at that time, about union representation. Subsequent meetings occurred and Andres began talking with fellow employees about the union. Many of the meetings occurred at the Oviedo residence and it was generally known that Andres was the leader of the union movement.

The union campaign was apparently a vigorous one with both sides actively engaged. Petitioner has produced affidavits indicating that during the period from December 1993 to March 24, 1994, supervisors and agents of the respondent engaged in conduct which constituted unfair labor practices. This conduct included explicit threats, interrogations, surveillance, solicitation of grievances and disparate enforcement of a no-solicitation rule. On January 6, 1994, Stephanie and Andres Oviedo each received a written warning from the respondent. The warnings indicated that each one had violated the company's no-solicitation rule by distributing union literature on company premises. On February 11, 1994, the union filed a petition for election under the Act seeking to represent a bargaining unit of La Siesta employees. The petition alleged that the union had obtained more than thirty percent of the employees covered in the proposed bargaining unit.

On February 12, 1994, the respondent terminated Andres Oviedo. Andres had received a warning for non-performance and carelessness in his job duties on February 11, 1994. Andres' termination report indicated that he was terminated because he had received four warnings in six months. Company policy provided that an employee may be terminated if he receives three written warnings in a six month period. On February 22, 1994, the union filed a charge with the NLRB alleging unfair labor practices. The charge indicated that the respondent had discharged Andres for his support and activities on behalf of the union. On March 4, 1994, Harold Thomas received a counseling notice explaining the company policy on solicitation on company property. Thomas had apparently been seen providing union literature to other employees. On March 16, 1994, the union filed another charge with the NLRB alleging unfair labor practices. This charge alleged that the respondent had issued warnings to its employees for their support of the union and had threatened a non-employee union agent with arrest for handbilling.

On March 24, 1994, an election was held based upon the union's petition to represent production and maintenance employees. The union waived its right to block the election based upon the unfair labor practices. The largest meeting of employees with a union representative had occurred just prior to the election. Of 267 eligible voters, 85 voted in favor of representation by the union and 110 voted against representation. On March 29, 1994, the union filed two additional charges of unfair labor practices with the NLRB. The charges alleged that the respondent had engaged in various unfair labor practices prior to the election. This case was filed in this court on June 22, 1994. The parties have agreed that no unfair labor practices have occurred at the respondent's facility since the election on March 24, 1994.

In the instant petition, petitioner seeks an order asking for the following affirmative relief during the pendency of the Board proceedings: (1) expungement from the employees' records the written warnings issued to Andres Oviedo, Stephanie Oviedo and Harold Thomas; (2) an offer of interim reinstatement to Andres Oviedo to his former job and expungement from his record of any reference to his discharge; and (3) the posting of copies of the court's order at the respondent's facility. In addition, petitioner seeks an order restraining the respondent from engaging in a variety of acts which constitute unfair labor practices under the Act.

■ Section 10(j) authorizes district courts to grant interim injunctive relief to maintain

the status quo pending the Board's ultimate resolution of the merits of the underlying unfair labor practices claims. 29 U.S.C. § 160(j). In the interim proceeding, the district court is not expected to decide the merits of the unfair labor practice claims, since that is the Board's responsibility. To resolve a section 10(j) petition, a district court considers only two issues: (1) whether there is "reasonable cause to believe" that a respondent has violated the Act; and (2) whether temporary injunctive relief is "just and proper." *Angle v. Sacks,* 382 F.2d 655, 658–59 (10th Cir.1967).

## REASONABLE CAUSE

The "reasonable cause" requirement, unlike the "just and proper" requirement, is not found in the language of section 10(j) of the Act. The "reasonable cause" standard was developed in cases arising under section 10(1) of the Act. The standard, however, has been applied to section 10(j) cases, including the *Angle* case in the Tenth Circuit.

The respondent has suggested, relying upon *Miller v. California Pacific Medical Center,* 19 F.3d 449 (9th Cir.1994) *(en banc )* and *Kinney v. Pioneer Press,* 881 F.2d 485 (7th Cir.1989), that the reasonable cause standard should be dropped in 10(j) cases. While these cases contain some persuasive arguments for the abandonment of the reasonable cause requirement in 10(j) proceedings, we believe that we are bound by Tenth Circuit precedent. *See Angle,* 382 F.2d at 658 ("finding of ... reasonable cause is an implicit prerequisite for relief under section 10(j)"). Although *Angle* is almost thirty years old, we find some support for the continued application of the reasonable cause standard in subsequent Tenth Circuit section 10(j) cases. *See, e.g., NLRB v. Acker Industries, Inc.,* 460 F.2d 649, 652 (10th Cir.1972).

█ Although *Angle* establishes the reasonable cause requirement, it provides little guidance on the question of what it takes for petitioner to demonstrate it. Other courts have adopted varying formulations of the requirement. *See, e.g., Asseo v. Centro Medico Del Turabo,* 900 F.2d 445, 450 (1st Cir. 1990) (determination based upon whether Regional Director's "position is fairly sup-ported by the evidence"); *Pascarell v. Vibra Screw Inc.,* 904 F.2d 874, 882 (3d Cir.1990) ("there must be a substantial, non-frivolous, legal theory, implicit or explicit, in the Board's argument, and second, taking the facts favorably to the Board, there must be sufficient evidence to support that theory"); *Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1189 (5th Cir.1975) ("district court need only to decide that the Board's theories of law and fact are not insubstantial or frivolous"), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976); *Gottfried v. Frankel,* 818 F.2d 485, 493 (6th Cir.1987) ("'relatively insubstantial' burden in that [Regional Director] need not prove that an unfair labor practice occurred but must only produce some evidence in support of the petition"); *Arlook v. S. Lichtenberg & Co.,* 952 F.2d 367, 371 (11th Cir.1992) (district court's inquiry "limited to evaluating whether Board's theories of law and fact are not insubstantial and frivolous").

This court is convinced that the standard for reasonable cause is relatively insubstantial. We believe that the court need only find that the petitioner's position is fairly supported by the evidence. To the extent that the parties present conflicting factual allegations, we must interpret the conflict in the light most favorable to the petitioner. *See Pascarell,* 904 F.2d at 877 n. 3.

█ With this standard in mind and after carefully reviewing the evidence presented, the court finds reasonable cause to believe that the respondent has committed unfair labor practices. The respondent has not offered any evidence to contradict most of the evidence offered by the petitioner. The respondent has sought only to challenge the basis for the discharge of Andres Oviedo. On this issue, the respondent presented four witnesses who detailed the events leading to Andres' termination. While the evidence concerning his termination is in substantial dispute, we are convinced that the reasonable cause prong has been met, particularly in view of the manner in which we must view the evidence.

*JUST AND PROPER*

 Once reasonable cause is established, the court must determine that the particular injunctive relief sought is "just and proper." While the reasonable cause standard affords much deference to the Regional Director's determination, this second consideration affords much more discretion and responsibility upon the district court. *Pilot Freight*, 515 F.2d at 1192. As with the reasonable cause prerequisite, the meaning of the "just and proper" requirement is not settled. Section 10(j) provides no guidance to its definition. The courts have adopted different standards on its meaning. Some courts have suggested that the traditional equitable standards for injunctive relief should be applied. *See, e.g., Miller*, 19 F.3d at 459–60; *Kinney*, 881 F.2d at 490–91; *Maram v. Universidad Interamerica de Puerto Rico, Inc.*, 722 F.2d 953, 958 (1st Cir.1983); *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1033–34 (2d Cir.1980). The Tenth Circuit, however, has not adopted the application of the traditional equitable principles in a 10(j) proceeding. *See Atchison, Topeka & Santa Fe v. Lennen*, 640 F.2d 255, 260 (10th Cir.1981) (in dicta, court suggests that traditional equitable considerations such as irreparable injury and absence of adequate remedy at law should not be considered). In *Angle*, the Court held that relief under section 10(j) is just and proper upon a showing that the "purposes of the Act will be frustrated" or that the "efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless" unless temporary relief is granted. The Third Circuit has adopted a similar standard, suggesting that relief is appropriate under section 10(j) when "the nature of the alleged unfair labor practices are likely to jeopardize the integrity of the bargaining process and thereby make it impossible or not feasible to restore or preserve the status quo pending litigation." *Vibra Screw*, 904 F.2d at 879.

 Although petitioner has alleged in his petition that respondent "continues to engage in unfair labor practices" and "will continue to engage in like or similar conduct," petitioner acknowledged that no unfair labor practices have occurred since the election. Petitioner further admitted that there is no reason for the respondent to engage in any additional unfair labor practices at the present time or in the future given the present status of union activity at the plant. Petitioner argued that a temporary injunction is necessary to remove the "lingering effect" of the actions of the respondent prior to the election. Petitioner suggests that the past unfair labor practices would have an impact in a future rerun election if immediate relief is not granted now.

The respondent argues that the unique circumstances of this case require the denial of an injunction. It notes that the union election has taken place in this case and that no additional union activity is contemplated. The respondent asserts that the Board can take whatever remedial action is necessary prior to a rerun election if such an election is eventually ordered. The respondent further contends that the petitioner's delay in bringing this action supports the denial of the request for temporary injunction.

The court would ordinarily have little problem in granting the petitioner's motion. Cease and desist orders as well as reinstatement are common remedies in cases where there is reasonable cause to believe that unfair labor practices have occurred.[2] However, the combination of the unique circumstances of this case coupled with the delay in

---

2. The court shall focus upon the petitioner's request for a cease and desist order and for reinstatement of Andres Oviedo. The facts demonstrate that the petitioner is clearly not entitled to interim relief on the other requests for affirmative relief.

It was undisputed that the warning issued to Stephanie Oviedo would be withdrawn from her personnel file on July 6, 1994 pursuant to standard company policy which provides that written warnings are effective for only a six month period. Therefore, there is no need for the issuance of any injunctive relief concerning this matter.

Finally, the petitioner did not ultimately challenge the respondent's contention that Harold Thomas was issued a counseling notice, not a written warning. The significance of this fact is that Thomas is not subject to any discipline due to the issuance of a counseling notice. Accordingly, we see no need to provide injunctive relief concerning the counseling notice.

bringing this action require denial of the petitioner's request for temporary injunction.

This case presents an extremely unusual situation. An election has been held and the union lost. Charges of unfair labor practices during the pre-election period have been filed with the NLRB and proceedings are continuing there. There is no indication that there will be any union activity until there is a Board ruling. In addition, there is no indication that the respondent will engage in additional unfair labor practices pending resolution of the proceedings before the Board. This case differs substantially from the majority of other cases arising under section 10(j). In those cases, differing from the present situation, the interim relief is sought as union organizing activities continue or as an aid in the bargaining process.

A grant of relief by this court would serve no purpose and would be no more effective than a final Board order. The issuance of a cease and desist order would appear to have no benefit to anyone. The petitioner has acknowledged that no unfair labor practices have taken place since the election and has acknowledged that it is unlikely that such practices would occur in the future. The court is convinced that the union can swiftly and effectively reconstruct itself once the Board renders its final decision. We do not believe that the remedial purposes of the Act will be frustrated by the denial of section 10(j) relief. Should the petitioner eventually prevail, the Board can provide all relief necessary, including a cease and desist order, and reinstatement and back pay.

■ The court is also concerned with the Regional Director's delay in bringing this action. Delay is an appropriate consideration in determining whether section 10(j) relief is just and proper, especially if the harm has already occurred. As stated in *Angle:*

It would appear that much of the problem presented to the trial court, and the difficulty caused by the mandatory nature of the order arose from the delay by the Board in seeking the remedy. The more time that elapses between the time the incidents occur the less effective injunctive relief becomes, and it becomes increasingly difficult to show it to be a "just and proper" remedy. This could, of course, reach a point where relief should be denied on that ground alone.

382 F.2d at 661.

In *Pilot Freight,* the Fifth Circuit had this to say about delay:

Nor did the district court abuse its discretion in failing to order reinstatement of the two employees arguably discharged for union activity. The Board waited three months before petitioning the district court for temporary relief. Although the time span between commission of the alleged unfair labor practices and filing for § 10(j) sanctions is not determinative of whether relief should be granted, it is some evidence that the detrimental effects of the discharges have already taken their toll on the organizational drive. It is questionable whether an order of reinstatement would be any more effective than a final Board order at this point.

515 F.2d at 1193.

The Board's delay militates against the urgency of the need for interim relief. Andres Oviedo was terminated in February 1994. Despite his termination and the other unfair labor practices, the union allowed the election to take place. In addition, the Regional Director failed to seek interim relief in this court until June 22, 1994, over four months after Andres' termination and three months after the election. Because of the delay by the petitioner in bringing this action, any harm that might occur in the absence of the requested injunction, namely the erosion of employee support for the union, has already occurred due to the Board's tardiness. Whatever "lingering effect" exists as the result of the respondent's unfair labor practices will no more be cured now than it would be at the conclusion of the Board proceedings. We remain unconvinced that interim relief at this point would be more appropriate or effective than the final decision by the Board. Accordingly, the petitioner's motion for temporary injunction under section 10(j) shall be denied.

**IT IS THEREFORE ORDERED** that petitioner's petition for injunction under section

10(j) of the National Labor Relations Act (Doc. # 1) be hereby denied.

**IT IS SO ORDERED.**