UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

F. ROZIER SHARP, Regional Director
for Region Seventeen of the National
Labor Relations Board, for and on
behalf of the NATIONAL LABOR
RELATIONS BOARD,

No. 99-5111

Petitioner-Appellee,

v.

WEBCO INDUSTRIES, INC.,

Respondent-Appellant.

---

ORDER
Filed September 11, 2000

---

Before **EBEL**, **HOLLOWAY**, and **HENRY**, Circuit Judges.

---

This matter is before the court on appellee's motion to publish the court's

order and judgment filed on July 11, 2000. The motion is granted. A copy of the

published opinion is attached.

Entered for the Court
PATRICK FISHER, Clerk of Court

By: Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JULY 11 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

F. ROZIER SHARP, Regional Director
for Region Seventeen of the National
Labor Relations Board, for and on
behalf of the NATIONAL LABOR
RELATIONS BOARD,

        Petitioner-Appellee,

   v.

WEBCO INDUSTRIES, INC.,

        Respondent-Appellant.

No. 99-5111

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
D.C. NO. 99-CV-0352**

---

     David E. Strecker (James E. Erwin with him on the briefs) of Strecker &
Associates, P.C., Tulsa, Oklahoma for the Appellant.

     Aaron N. Karsh (Frederick L. Feinstein, Mary Joyce Carlson, Barry J.
Kearney, Ellen A. Farrell, Judith I. Katz, with him on the brief) of the National
Labor Relations Board, Washington D.C.

---

Before **EBEL**, **HOLLOWAY** , and **HENRY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

_____

### I. BACKGROUND

Webco Industries, Inc. ("Webco") appeals the grant of a petition filed by F. Rozier Sharp, a Regional Director of the National Labor Relations Board, acting on behalf of the Board, for temporary injunctive relief sought pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) (the "Act").[1] The dispositive question is whether the district court abused its discretion when it concluded that the Board had shown that the temporary injunction it sought was based on reasonable cause and would be just and proper.

_____

[1] Section 160 provides:

> The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

.

## A. Events Preceding the Filing of the § 10(j) Petition

The facility at issue is the Webco steel tubing plant in Sand Springs, Oklahoma, Webco's largest production facility. In January 1997, the United Steelworkers of America, AFL-CIO, CLC (the "Union") began an organizing campaign at the plant. Later that year, in an action unrelated to this case, the Board and Union alleged that in March 1997 Webco engaged in various unlawful activities including threatening pro-Union employees and suspending or discharging other employees thought to be pro-Union. In April 1997, the Union sent a letter to the plant's employees informing them of the cessation of the Union's drive, citing Webco's intimidation and scare tactics as a deterrent to Union membership.

After the Administrative Law Judge filed his conclusions regarding the March 1997 activities, the Union resumed organizational meetings in June and August 1998. During this time, management discussed the union activity and identified and maintained a list of various "pro-Union" employees. Attendance at these meetings was still relatively sparse, with approximately 31 of the plant's 280 employees showing interest. Handbilling and other activities continued during this time.

In September 1998, Webco announced a new company rule that prohibited employees from discussing the Union on employee time or outside the breakroom.

On October 7, 1998, Webco permanently laid off fifty-three employees from the plant, citing economic pressures in the steel industry.

On October 8, 1998, the Union filed an unfair labor practice charge with the Board's Regional Director and alleged that Webco terminated several employees in retaliation for their Union activities. The Union amended this charge in December, alleging the unlawful termination of 25 pro-Union employees.

On May 10, 1999, the Regional Director sought § 10(j) injunctive relief pending the completion of Board's administrative proceedings against Webco. The district court found that there was reasonable cause to believe that Webco committed numerous unfair labor practices alleged in the Board's § 10(j) petition, including: prohibiting employees from speaking about Union activities on employees' time, while permitting discussion of non-Union subjects during worktime; interrogating and threatening Union-supporters with reprisals; and discharging six pro-Union employees, five of whom were members of the nine-person Union steering committee. The court found the interim relief sought by the Board to be just and proper, and ordered Webco to cease and desist from committing the alleged unlawful practices and to reinstate or preferentially hire the six discharged employees.

## II. DISCUSSION

## A. Standard of Review

"Under section 10(j) it is contemplated that a district court grant injunctive relief if the Board establishes reasonable cause to believe that the Act has been violated, and it appears that the remedial purposes of the Act would be frustrated unless [temporary] relief . . . is granted." NLRB v. Acker Indus., Inc. , 460 F.2d 649, 652 (10th Cir. 1972); see Angle v. Sacks , 382 F.2d 655 (10th Cir. 1967) . In this circuit, as well as several others, rather than considering a traditional four-part equitable test to grant a § 10(j) petition, the district court considers whether there was (1) "reasonable cause to believe" that respondent violated the Act; and (2) whether the relief sought is "just and proper." Angle , 382 F.2d at 659, 660; see e.g. , Pascarell v. Vibra Screw Inc. , 904 F.2d 874 (3d Cir. 1990) (applying two-part test); Boire v. Pilot Freights Carriers, Inc. , 515 F.2d 1185 (5th Cir. 1975) (same); Arlook v. S. Lichtenberg & Co. , 952 F.2d 367 (11th Cir. 1992) (same). The granting of injunctive relief under this standard is a matter committed to judicial discretion, which is to say that we review for "faulty legal premises, clearly erroneous factual findings, or improper application of the criteria governing preliminary injunctive relief." Kinney v. Pioneer Press , 881 F.2d 485, 493 (7th Cir. 1989); see Angle , 382 F.2d at 658.

**B. Reasonable Cause**

"'Reasonable cause' to believe that unfair labor practices have occurred is a factual finding." Bernstein v. Carter & Sons Freightways, Inc., 983 F. Supp. 994, 1006 (D. Kan. 1997); see Gottfried v. Frankel, 818 F.2d 485, 493 (6th Cir. 1987). Our circuit, unlike several others, has not established what evidence constitutes "reasonable cause" for purposes of § 10(j). See Arlook, 952 F.2d at 371 (holding district court's inquiry "limited to evaluating whether Board's theories of law and facts are not insubstantial and frivolous"); Asseo v. Centro Medico Del Turabo, Inc., 900 F.2d 445, 450 (1st Cir. 1990) (holding that reasonable cause exists where the Board's "position is fairly supported by the evidence"); Pascarell, 904 F.2d at 882 (stating "there must be a substantial, non-frivolous, legal theory, implicit or explicit, in the Board's argument, and second, taking the facts favorably to the Board, there must be sufficient evidence to support that theory"); Gottfried, 818 F.2d at 493 (noting the "relatively insubstantial burden" to demonstrate reasonable cause); Boire, 515 F.2d at 1189 (stating that the "district court need only decide that the Board's theories of law and fact are not insubstantial or frivolous"); see also Kinney, 881 F.2d at 488 (noting that "there has been anything but unanimity among the circuits on the question what it takes for the [Board] to demonstrate reasonable cause") (citing

cases). But cf. Miller v. California Pac. Med. Ctr. , 19 F.3d 449, 456 (9th Cir.

1994 (en banc) (holding that § 10(j) has "no 'reasonable cause' component").

We agree that to establish reasonable cause, the Board does not have to

prove that an unfair labor practice has occurred, rather it must only produce some

evidence "that [its] position is fairly supported by the evidence." Asseo , 900

F.2d at 450; see Gottfried , 818 F.2d at 493; Bernstein , 983 F. Supp. at 1006 . The

Board needs to convince the district court that its theory of liability is valid,

substantial, and not frivolous. See Pascarell , 904 F.2d at 882; Bernstein , 983 F.

Supp at 1006. The court considers only whether the Board's evidence was

sufficient to "permit a rational factfinder, considering the evidence in the light

most favorable to the Board, to rule in favor of the Board." Arlook , 952 F.2d at

371.

Webco argues that the Board has not met the reasonable cause standard,

citing the Board's reliance on affidavits from former employees and Union

officials. Webco contends on appeal that the employees' affidavits only show

that the former employees were part of the company-wide layoff caused by an

economic downturn and that these employees had little involvement with Union

activities. Our cases do not support Webco's premises and conclusions.

In this regard, Webco does not address the particularly damaging affidavits

from its former managers. These affidavits support the Board's contentions that

the company was strongly anti-Union and considered Union supporters to be a threat. The affidavits indicate that the company kept a close eye on pro-Union employees, and that each of several attempts, over the course of more than twenty years, to bring unions into Webco were quashed by management. As to the level of Union support demonstrated by the six discharged employees, the district court weighed the entirety of their affidavits in its conclusion. The ultimate determination of whether Webco in fact committed unfair labor practices was not before the district court, and similarly it is not for us to determine whether unlawful activity actually occurred. See Angle, 382 F.2d at 661. It is sufficient that we agree there was reasonable cause under Angle.

**C. Just and Proper**

If the court finds that there is reasonable cause to believe that unfair labor practices have been committed, the court must next determine whether injunctive relief is "just and proper." Angle, 382 F.2d at 660. In making this determination, the court considers that § 10(j) of the Act was added to give the Board a means of preserving the status quo pending the completion of administrative procedures. Specifically, "[t]he circumstances of the case must demonstrate that there exists a probability that the purposes of the Act will be frustrated unless temporary relief is granted" Id., 382 F.2d at 660. "[T]he relief

to be granted is only that reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power." Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1091 (3d Cir. 1984).

Webco argues that reinstatement of the six discharged employees was not "just and proper" relief. The company contends that a crucial distinction between this case and others where a § 10(j) injunction has been upheld is that in the latter, the union had gained substantial employee support. See e.g., NLRB v. Electro-Voice, Inc., 83 F.3d 1559 (7th Cir. 1996) (noting there was "some evidence that support for the union among plant workers remained high"); Pascarell, 904 F.2d at 877 (the Union represented a majority of the employees). Here, Webco argues, there was no appreciable Union support at the plant, and "where there is no evidence of appreciable support for the Union at the time of the alleged unfair labor practices, an injunction is not necessary to maintain the status quo." Aplt's Br. at 29.

We disagree. Webco has not fared well in its record of labor practices. See e.g., Webco Indus. v. NLRB, 2000 WL ____, __ F.3d __ (10th Cir. July __, 2000) (upholding several findings of unlawful labor practices in violation of §§ 8(a)(1) and (3) of the Act). Recent Union-organizational drives were countered with multiple unfair labor practices. It is disingenuous to argue a lack of appreciable Union support in light of this record, which reflects the company's

strenuous efforts to stifle such Union support. Cf. Sharp v. Parents in Community Action, Inc. , 172 F.3d 1034, 1040 (8th Cir. 1999) (affirming district court's denial of § 10(j) relief "where there was no collective bargaining in process, no recognized or certified union, no on-going organizing activities, no showing of strong union support among . . . employees, and only one union activist discharged"). The reinstatement of six of potentially 25 pro-Union supporters and the additional injunctive relief sought is "reasonably necessary to preserve the ultimate remedial power of the Board." Suburban Lines, 731 F.2d at 1091.

Webco also asserts that a seven month delay between the Union's original charge in this matter and the Regional Director's seeking injunctive relief mooted the need for interim relief. The undue delay arguably reduces the credibility of the Board's argument that injunctive relief is necessary. Conceivably, as a result of the Board's tardiness, "any harm that might [have] occur[red] in the absence of the requested injunction, namely the erosion of employee support for the union, has already occurred." Sharp v. La Siesta Foods, Inc. , 859 F. Supp. 1370. 1375 (D. Kan. 1994) (considering three to four month delay). Webco also challenges the Board's decision to request § 10(j) relief one day before the commencement of the unfair labor practices trial.

As to the delayed petition filing, we observed in Angle :

> The more time that elapses between the time the
> incidents occur the less effective injunctive relief

> becomes, and it becomes increasingly difficulty to show
> it to be a "just and proper" remedy. This could, of
> course, reach a point where relief should be denied on
> that ground alone.

382 F.2d at 661; see also Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185, 1193 (5th Cir. 1975) (considering three month delay in filing of petition). We agree that "[d]elay is only significant if the harm has occurred and the parties cannot be returned to the status quo or if the Board's final order is likely to be as effective as an order for interim relief." Aguayo v. Tomco Carburetor Co., 853 F.2d 744, 750 (9th Cir. 1988), overruled on other grounds by Miller v. California Pac. Med. Ctr., 19 F.3d. 449 (9th Cir. 1994) (en banc); see Solien v. Merchants Home Delivery Service, Inc., 557 F.2d 622, 627 (8th Cir.1977). But see Gottfried v. Frankel, 818 F.2d 485, 495 (6th Cir. 1987) (stating "we find no authority for the proposition that district courts are required to consider the delay in filing a section 10(j) petition, or that a failure to consider the delay is a basis for overturning the grant of injunctive relief).

"Although the amount of time that may elapse before the Board's action can be considered unreasonable is, to a large extent, case-specific, there is a certain leniency that the Board must be afforded, stemming from the deference to the Board that is built into the statutory scheme." Pascarell, 904 F.2d 874, 881. We note that several factors are relevant: (1) the Board's historical progress has been lumbering at best, and the resultant backlog necessitates some delay, see United

-11-

States v. International Bhd. of Teamsters, 948 F.2d 98, 111 (2d Cir.) (Winter, J., dissenting) (noting Board procedures are notorious for their "glacial speed in adjudicating unfair labor practices"); vacated as moot sub nom, Yellow Freight Sys. Inc. v. United States, 506 U.S. 802 (1992), (2) the Board needs a reasonable period of time to investigate, deliberate, and authorize the filing of a § 10(j) action, see Pascarell, 904 F.2d at 881 (noting, in conjunction with a six-month delay, that "[t]he Board needs time to do a thorough investigation before it even requests the injunction."), and (3) in this case, the Board filed a substantially amended complaint, so that the unfair labor charges were finalized just four and a half months before the filing the § 10(j) petition.

Congress enacted § 10(j) in part to counteract "'the relatively slow procedure of [the] Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, [which] falls short of achieving the desired objectives [of the Act].'" Miller, 19 F.3d at 455 n.3 (quoting S. Rep. No. 105, 80th Cong., 1st Sess. 8,27 (1947)). Congress intended a grant of § 10(j) relief to preclude "persons violating the act to accomplish their unlawful objective before being placed under any legal restraint." Id. "Although interim reinstatement may not precisely restore the status quo in the case before us," Aguayo, 853 F.2d at 750, it might revitalize the Union's sagging organizational campaign at Webco. Although we cannot excuse the Board for a "decelerat[ion]

from its usual snail's pace," Suburban Lines, Inc., 731 F.2d at 1102 (Aldisert, J., concurring), we hold that the delay and timing of the filing in this case were not unreasonable. See Aguayo, 853 F.2d at 750 (affirming grant of § 10(j) relief reinstating discharged employees after four-month Board delay).

Webco suggests that the commencement of the ALJ hearing on the underlying action also obviated the need for interim relief. We note that the ALJ has completed its findings, and the Board is reviewing these findings. Webco is well aware that the ALJ decision on its own is not self-enforcing, and that a § 10(j) injunction will continue until the Board issues its final order in the underlying action. See Boire, 515 F.2d at 1193. Webco's argument is, therefore, without merit.

We also reject Webco's remaining arguments: (1) that the Board did not follow its own casehandling manual guidelines; and (2) that an injunction would not be proper under the four-part equitable test, which we should consider adopting. [2] As to the first contention, the Board's guidelines specifically state that

---

[2] Under the "traditional" equitable approach, a court would consider: (1) the likelihood of success on the merits; (2) the potential for irreparable injury in the absence of relief; (3) whether the injury to employees outweighs the harm that the injunction would cause the company; and (4) whether the injunctive relief is in the public interest. See Parents in Community Action, 172 F.3d at 1038 n.2; Pye v. Sullivan Bros. Printers, Inc., 38 F.3d 58, 63 (1st Cir. 1994); Miller v. California Pac. Med. Ctr., 19 F.3d at 456; Kinney, 881 F.2d at 490 n.3. See also, 2 The Developing Labor Law Ch. 32 § III (Patrick Hardin, ed., 3d ed.

(continued...)

there "is no statutory delineation of criteria governing the use of Section 10(j), nor has case law developed a definitive, governing formula." Aplt's App. at 228 § 10310.2 (NLRB Casehandling Manual (Part One) Unfair Labor Practice Proceedings). Furthermore, the guidelines suggested "are not all inclusive." Id. at 229. Also, we disagree with Webco's contention that this case fell outside the Board's guidelines as a whole. Factors to consider when filing a § 10(j) petition include whether the alleged unfair labor practice "is of a continuing or repetitious pattern" and whether without § 10(j) relief, it would be impossible to "restore the status quo or dissipate the consequences of the unfair labor practices," both of which appear to be at issue here. Aplt's App. at 229.

Finally, as to the second contention, we will not reconsider this circuit's longstanding Angle two-part test in favor of a traditional equitable analysis. Webco is aware that we cannot overrule another panel of this court, absent en banc review. [3] See In re Smith , 10 F.3d 723, 724 (10th Cir. 1993).

## III. CONCLUSION

[2](...continued)
1992 & 1998 Supp.).

[3] We note that perhaps under certain factual scenarios, the outcome under the two tests will differ. An Angle inquiry necessarily subsumes various equitable considerations, and, given the facts of this case, were we to apply the four-part equitable approach, we would hold that the district court did not abuse its discretion when its granted injunctive relief to the petitioner.

For the reasons stated above, we DENY Webco's appeal and we AFFIRM the district court's grant of injunctive relief under § 10(j) of the Act.